577 A.2d 881

READING ANTHRACITE COMPANY, Schuylkill Energy Resources, Inc., James J. Curran and John J. Curran, Petitioners,

v.

John W. RICH, John W. Rich, Jr., Bonnie Rich Ryan, Robert Ryan, Gloria Rich Curran, Lawrence F. Tornetta, Brian Rich and Gilberton Coal Company, Respondents.

Supreme Court of Pennsylvania.

Argued May 10, 1990.

Decided June 25, 1990.

James J. Flaherty, John M. Elliott, Philadelphia, Robert W. Valimont, William E. Benner, Doylestown, for petitioners.

Arnold Borish, for L. Tornetta.

John W. Pelino, Philadelphia, for John W. Rich, et al.

Michael Dinnerstein, Washington, D.C., for amicus curiae United Mine Workers of America.

Before ZAPPALA, PAPADAKOS and CAPPY, JJ. .

## ORDER OF COURT

PER CURIAM.

In view of the Opinion and Order entered this date in which the actions of the Chancellor taken after March 13, 1990 have been vacated, the Emergency Application For Extraordinary Relief in the Nature of a Writ of Prohibition filed by Petitioners–Appellants, James J. Curran, Jr., and John J. Curran is dismissed as moot.

NIX, C.J., did not participate in this proceeding.

LARSEN, FLAHERTY, McDERMOTT and CAPPY, JJ., did not participate in the consideration and determination of this Emergency Application.

## OPINION OF THE COURT

PAPADAKOS, Justice.[1]

Reading Anthracite Company, Schuylkill Energy Resources, James J. Curran, Jr., and John Curran (Petitioners) have filed an application with this Court seeking a stay of the order of the Court of Common Pleas of Bucks County of March 9, 1990, directing that Reading Anthracite Company hold a special shareholders meeting on March 13, 1990. The Court directed that at this special meeting, Lawrence F. Tornetta, one of the Respondent's herein, would be permitted to vote his shares of stock in Reading Anthracite Company free from a certain stock pooling agreement which would have vested control of his vote in Petitioners.

---

1. This matter was heard, considered and determined before new counsel entered its appearance for Petitioners.

This Order was entered during the consideration by the court below of an action brought by Petitioners against John W. Rich, John W. Rich, Jr., Bonnie Rich Ryan, Robert Ryan, Gloria Rich Curran, Lawrence F. Tornetta, Brian Rich and Gilberton Coal Company (Respondents), the purpose of which was to determine the validity of the aforementioned stock pooling agreement and the legitimacy of actions taken at the July 18, 1989, special meeting of the shareholders of Reading Anthracite Company.

An Adjudication and Decree Nisi were entered on March 1, 1990, wherein the Chancellor determined that the action taken at the July 18, 1989, shareholders meeting was invalid because the stock pooling agreement used by the Petitioners was unenforceable against Respondent Tornetta and that a new stockholders meeting would have to be convened. Accordingly, the Chancellor entered a Decree Nisi directing that this special shareholders meeting would be held within ten (10) days of the entry of a final order, and invited the parties to submit post-verdict motions.

Such motions were filed by the Petitioners on the tenth day, but prior to their receipt and consideration by the Chancellor, and the entry of a final adjudication and decree, the Chancellor entered an Order which effectively disposed of the ultimate issue in the case. Said Order was entered on the ninth day, March 9, 1990, setting the date of the special stockholders meeting for March 13, 1990, and disposing of the exceptions filed to the March 1, 1990, agreement.

Petitioners lodged a direct appeal with the Superior Court on March 12, 1990, and applied to that Court for an Order which would stay the convening of the March 13, 1990, special shareholders meeting pending their appeal. That application was denied on March 13, 1990, and Petitioners sought further relief with this Court. This writer granted an ex-party temporary stay on March 13, 1990, and immediately invited arguments by conference call or in person, in chambers. The parties chose to present arguments in person in chambers and they were heard on March 14, 1990. Following such arguments and the filing of memoranda of

law, an order was entered staying all proceedings in the lower court pending review by the full Court. Argument before the full Court was scheduled for May 10, 1990, at which time counsel for all parties were given the opportunity to advance arguments in favor of or in opposition to the entry of a stay of the special shareholders meeting pending the direct appeal in the Superior Court.

It is also important to mention that on April 16, 1990, the Chancellor, apparently in disregard of the stay order entered by this Court, entered an Opinion and Order, disposing of the exceptions filed to the March 1, 1990, Decree Nisi and entered a Final Order directing that the special shareholders meeting be held within five days of the removal of any outstanding stay of the March 9, 1990 order.

■ We first note that review of the denial by the Superior Court of Petitioners' stay request is authorized by our Rules of Appellate Procedure 1702(c)[2] and 3315[3] and represents an exercise of this Court's inherent supervisory power over the inferior courts to prevent egregious error. Petitioners have noted in their jurisdictional statement that we have jurisdiction to hear this matter by virtue of 42 Pa.C.S. § 724[4] and our Rule of Appellate Procedure 3315.

2.  Pa. Rule of Appellate Procedure 1702(c) provides:

    **Supreme Court review of appellate court supersedeas and stay determinations.** No appeal, petition for allowance of appeal or petition for review need be filed in the Supreme Court in connection with a reapplication under Rule 3315 (review of stay orders of appellate courts.)

3.  Pa. Rule of Appellate Procedure 3315 provides:

    Where the Superior Court or the Commonwealth Court in the exercise of its appellate jurisdiction has entered an order under Chapter 17 (effect of appeals; supersedeas and stays), such order may be further reviewed by *any* justice of the Supreme Court in the manner prescribed by Chapter 17 with respect to appellate review of supersedeas and stay determinations of lower courts. (emphasis added)

4.  42 Pa.C.S. § 724 provides in pertinent part:

    **Allowance of appeals from Superior and Commonwealth Courts (a) General rule.**—Except as provided by section 9781(f) (relating to limitation on additional appellate review), final orders of the Supe-

This is not entirely correct. Section 724 of the Judicial Code provides that discretionary appeals may be sought in this court from final orders of the Commonwealth and Superior Courts, but as noted in our Rule of Appellate Procedure 1702(c) an appeal, petition for allowance of appeal or petition for review does not lie to review the action of the intermediate court's decision to grant or deny a stay. Rather, because of the nature of the review involved in such cases, the proper procedure is to file an application with this Court under Rule of Appellate Procedure 3315 seeking to review the action of the intermediate appellate court.

The principal purpose of this type of review is to prevent an inferior tribunal from causing damage, injustice or irreparable harm by its decision to grant or deny the relief requested, i.e., a stay. The review lies solely between two courts, a superior and an inferior tribunal, and is a means by which this Court exercises superintendence over the latter to prevent irreparable harm during the appellate process.

We have determined that when application to an intermediate appellate court is made seeking the stay of an order pending appeal, the party seeking the stay must make a strong showing that he is likely to prevail on the merits of his appeal as well as to show irreparable harm, and that the stay will not substantially harm other interested parties or the public interest. This standard was first articulated by this Court in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983), and governs when the grant of a stay is warranted. As a rule, we assume that a party will establish the existence of each criterion and that a court will assess the movant's chances for success on appeal and weigh the equities as they affect the parties and the public and, thereby, exercise its discretion to grant or deny a stay so that injustice will not follow from the court's decision.

rior Court ... may be reviewed by the Supreme Court upon allowance of appeal....

Because of the nature of our review, it must be limited to abuse of discretion which results in egregious error and it is with that prescription in mind that we review the propriety of denying Petitioners' application for a stay.

As we understand the procedural posture of the case which compelled Petitioners' appeal to the Superior Court and which, in turn, generated the stay request, the following events appear to be crucial. On March 1, 1990, the Chancellor entered his Adjudication and Decree Nisi, thereby triggering the right to file post-trial motions pursuant to Rule of Civil Procedure 227.1.[5] On March 9, 1990, the subject order was entered amending the Decree Nisi, ordering that the special shareholders meeting be convened on March 13, 1990, and permanently enjoined Petitioners from attempting to use the stock pooling agreement, the validity of which was one of the major issues in the equity action before the Chancellor.

The entry of this March 9, 1990, order is what triggered an appeal to the Superior Court and the propriety of which formed the basis of the stay request.

Pursuant to our *Process Gas* standard, Petitioners were entitled to a stay if they could establish:

1. That they are likely to prevail on the merits of their appeal;

2. That they will suffer irreparable injury if they are not granted a stay;

3. That the issuance of a stay will not substantially harm other interested parties in the proceedings, i.e., Respondents; and

4. That the issuance of a stay will not adversely affect the public interest.

*Id.,* 502 Pa., at 552–53, 467 A.2d at 808–809.

Regarding Petitioners' likelihood of success on the merits of its appeal to the Superior Court, we are satisfied that

---

5. Pa. Rule of Civil Procedure 227.1(c)(2) provides:
 Post-trial motions shall be filed within ten days after
  (2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.

Petitioners have met their burden. As we have noted, the appeal to the Superior Court was from the March 9, 1990, order directing that the Special Stockholders Meeting be convened on March 13, 1990. It is the propriety of the entry of this order which is under review and to satisfy the first prong of *Process Gas*, it must be demonstrated that this order was issued erroneously.

In the underlying equity action, the central issue appears to be the legality of actions taken at the special stockholders meeting of July 18, 1989, at which Petitioners used a stockpooling agreement to vote Mr. Tornetta's shares of stock together with their own shares, against his wishes. The affirmance of this action depends on the legality of the stockpooling agreement and because Mr. Tornetta's votes could "swing" any decision to Petitioners' side or Respondents' side, equity was invoked to determine the legality of the stockpooling agreement. As we have already noted, the Chancellor held extensive hearings on this issue and on March 1, 1990, issued his Adjudication and Decree Nisi.

█ Where a Chancellor files an adjudication and decree nisi, the parties are entitled to file exceptions, pursuant to Rule of Civil Procedure 227.1, and if such are filed, these exceptions must then be reviewed before a final decree is entered. Where parties are denied the opportunity of having their exceptions considered before the entry of a final decree is entered, we have routinely vacated the decree and remanded the record with directions to proceed in accordance with the Rules of Civil Procedure. *Rosenzweig v. Factor*, 457 Pa. 492, 327 A.2d 36 (1974); *Patrick and Wilkins Co. v. Adams*, 456 Pa. 566, 322 A.2d 341 (1974); *Thompson v. Thompson*, 451 Pa. 546, 301 A.2d 644 (1973); *Cooney v. Pennsylvania Osteopathic Association*, 434 Pa. 358, 253 A.2d 256 (1969); *Commonwealth ex. rel. Costa v. Boley*, 441 Pa. 495, 272 A.2d 905 (1971); *Pubusky v. DMF*, 428 Pa. 461, 239 A.2d 335 (1968).

█ In fact, we have indicated that in disposing of an action in equity on the merits, it is mandatory that the

Rules of Civil Procedure be followed before final relief is granted. *Patrick and Wilkins; Community Sports, Inc. v. Oakland Oaks,* 429 Pa. 412, 240 A.2d 491 (1968). The mandatory nature of these rules guarantees that procedural due process is satisfied before a final order is entered which sets the rights between the parties and orders any injunctive remedy. See, *Slater v. Rimar,* 462 Pa. 138, 338 A.2d 584 (1975).

█ It is patently clear that the core issue between the parties was the validity of the stockpooling agreement. If the agreement was invalid, then a new stockholders meeting was warranted. While the merits of this question were still being determined, the Chancellor entered his March 9, 1990 order, however, disposing of this question by directing that a new stockholders meeting be convened at which Petitioners would be *permanently enjoined* from using the stockpooling agreement. Such an order which grants permanent injunctive relief during the consideration of Petitioners' exceptions, is wholly lacking in due process and cannot be sustained.

In fact, such an order which grants mandatory injunctive relief, which goes to the merits of the case and which is entered while the merits of the case are still under consideration, goes far beyond the jurisdiction granted a Chancellor in equity matters. The action taken here is akin to entering an order directing that a litigant's house be torn down, while his exceptions are still under consideration. We could not support such an order any more than this order can be enforced.

Accordingly, it is clear that Petitioners can demonstrate a strong likelihood of success in overturning the March 9, 1990 order. Petitioners can also demonstrate irreparable harm if the stay is not granted because their right to have their exceptions considered in an orderly manner, in accord with concepts of fairness and due process, are being implicated. Respondents cannot complain to the issuance of a stay, because they are not entitled to having the merits of this equity action disposed of in violation of our rules and

procedural due process. Finally, the public interest is served by the issuance of a stay which guarantees the regularity of proceedings before the Chancellor. We insist that concepts of procedural due process be accorded litigants as enunciated in our Rules of Civil Procedure, and we believe that the Petitioners had a right to a stay of the March 9, 1990 order, pending a full review of the propriety of the Chancellor's action.

Additionally, we cannot fault Petitioners for appealing this order for they may have believed that their only remedy to preserve the status quo until the entry of a final decree was that of a direct appeal. As we read the record, Petitioners were confronted with the dilemma that, on the one hand, they were preparing to file their exceptions in a timely fashion asking the Chancellor to reconsider his findings of fact and conclusions of law in support of the legality of their actions, yet, on the other hand, the Chancellor had issued an order, the effect of which was to reject their claims before terminating the case on its merits.

Since these irregularities were not perceived by the Superior Court, we conclude that it committed an egregious error in not granting the requested stay. We can understand, however, that the narrow issue we are reviewing was somehow lost in the avalanche of paper filed by the parties, and because the parties were attempting to fit the elements of the *Process Gas* test to the *merits* of the equity case instead of to the propriety of entering injunctive relief which goes to the merits of a case while that very action is still pending.

We believe that granting injunctive relief under these circumstances so circumvents our rules that such action transcends a mere error of law and, in fact, exceeds the jurisdiction vested in a court of equity. In cases where we have found an inferior court acting in excess of its authority in adjudicating a case, we have restrained the inferior court through the writ of prohibition as an extraordinary remedy in cases of extreme necessity to secure order and regularity in judicial proceedings if none of the ordinary

remedies provided by law is applicable or adequate to afford relief. *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 483 A.2d 1339 (1984).

The criteria for granting a writ of prohibition are satisfied by meeting a two-pronged test. *Carpentertown Coal and Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948). First, it must be established that there is no adequate remedy at law to afford relief; second, there must be extreme necessity for the relief requested to secure order and regularity in judicial proceedings. Where relief may be sought through ordinary avenues of judicial review, the writ is not appropriate. *Spykerman v. Levy,* 491 Pa. 470, 421 A.2d 641 (1980).

While a court's erroneous or constitutionally offensive disregard of the rule of law or due process can be viewed as merely an error of law, which is a question cognizable in the normal appellate review process, we are not satisfied that the normal appellate review process can afford adequate relief. Petitioners had the right to expect that the integrity of their actions at the contested stockholders meeting (i.e., the use of the stock pooling agreement and the tabulation of the votes per their Judge of Election) would be preserved and enforced until the Chancellor disposed of the case before him as provided by law. Such a disposition includes the post-trial procedure specified in our Rules of Civil Procedure and includes the thirty (30) days in which an appeal may be lodged, following the entry of the final order.

That right, however, was not only ignored by the entry of the March 9, 1990 order, but appears also to have been taken away from Petitioners by the Chancellor's Opinion and Order of April 16, 1990, which purports to dispose of the exceptions filed by the parties and which also directs that the contested meeting be held within ten days of the dissolution of any stay order of this Court. The effect of this order would put Petitioners in the same bind that they were put into by the March 9, 1990 order and force them,

once again, to take their appeal and seek a stay within ten (10) days instead of the normal thirty (30) days [6].

Trial courts acting at law or in equity do not have the jurisdiction or power to extend or obviate the time in which an appeal may be lodged in the appellate courts, for this is a matter of legislative direction. *Jones v. Unguriet*, 364 Pa. 200, 71 A.2d 240 (1950). Since the appeal period is statutorily imposed, it is mandatory on the courts and goes to our jurisdiction to hear and decide a controversy. It is for this reason that we have often said that the timeliness of an appeal is jurisdictional and will be raised by the court *sua sponte*, if necessary. *U.S. National Bank of Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985); *Miller v. Commonwealth, Unemployment Compensation Board of Review*, 505 Pa. 8, 476 A.2d 364 (1984); *West Penn Power Co. v. Goddard*, 460 Pa. 551, 333 A.2d 909 (1975); *Commonwealth v. Yorktowne Paper Mills, Inc.*, 419 Pa. 363, 214 A.2d 203 (1965). Issuing an order which puts a party in the position to seek appellate review or intervention in less than the time permitted by statute is wholly outside the court's jurisdiction and may be enjoined by prohibition. We are not concerned that the parties have not specifically sought prohibition because, as we have read the record and the briefs, we think that the Petitioners' request to stay or enjoin the effect of the March 9, 1990 order is, in fact, an imperfectly framed request for a writ of prohibition.

We have, in the past, been willing to recognize such pleading deficiencies in the interest of justice, and to issue writs of prohibition to keep inferior courts within the limits of their rightful powers and jurisdiction. *Akron Borough v. Pennsylvania, P.U.C.*, 453 Pa. 554, 310 A.2d 271 (1973); *Carbon County v. Leibensperger*, 439 Pa. 138, 266 A.2d 632 (1970).

6.  42 Pa. C.S. § 5571(b) provides in pertinent part:
    ... [A]n appeal from ... a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order.

After a review of this matter, we are convinced that Petitioners had a right to have their exceptions considered by the Chancellor according to the Rules of Civil Procedure and that following their proper disposition, a final decree be entered from which the parties could appeal within the time permitted by statute.[7] Accordingly, to put the parties in this position, we conclude that in the interest of justice and to maintain order and regularity in these judicial proceedings, a writ of prohibition issue to the Chancellor nullifying his order of March 13, 1990, and all those opinions and orders entered thereafter which attempt to affect the Adjudication and Decree Nisi, including the Chancellor's Opinion and Order of April 16, 1990, April 27, 1990, and June 11, 1990. The matter is remanded so that the exceptions to the Adjudication and Decree Nisi may be considered in accordance with the Rules of Civil Procedure and, following their disposition and the entry of a final order, the parties may pursue appellate review as provided by our Rules.

We caution the Chancellor that in granting permanent injunctive relief which disposes of the ultimate issue (the reconvening of the shareholders meeting and the enjoining of the use of the stockpooling agreement) that the parties' right to seek appellate review within thirty (30) days be observed. The parties are also reminded, that in the event that an appeal is timely entered from the Chancellor's final order they should observe our Rules of Appellate Procedure and seek a stay of any final order, in the first instance, with the Chancellor and then proceed to the Intermediate Appellate Court. See Pa. Rule of Appellate Procedure 1732.

In view of our disposition of this matter, the appeal lodged in the Superior Court is now rendered moot, and we

7. In fact, we question the Chancellor's actions in even disposing of the exceptions and issuing a final order once the appeal had been lodged in the Superior Court and the matter stayed by us. The Chancellor was not acting to correct a formal *de minimus* error and we believe that once Petitioners filed their appeal from this order, the Chancellor was precluded from proceeding further in the matter. *Rosen v. Rosen*, 520 Pa. 19, 549 A.2d 561 (1988); Pa. Rule of Appellate Procedure 1701; see also, *Kaiser v. 191 Pres. Corp.*, 308 Pa.Superior Ct. 301, 454 A.2d 141 (1982); *Yeager v. Long*, 284 Pa.Superior Ct. 76, 425 A.2d 426 (1980).

order that court to dismiss that appeal. Our Order staying this matter is dissolved.

NIX, C.J., did not participate in this proceeding.

LARSEN, FLAHERTY and McDERMOTT, JJ., did not participate in the consideration or decision of this matter.

CAPPY, J., did not participate in the decision of this matter.