634 A.2d 1063

**COMMONWEALTH of Pennsylvania, Petitioner,**

**v.**

**Raymond MARTORANO and Albert Daidone, Respondents.**

Supreme Court of Pennsylvania.

Argued May 5, 1993.

Decided Nov. 8, 1993.

180

Ronald Eisenberg, Kathy L. Echternach, Arnold Gordon, Philadelphia, for petitioner.

Thomas C. Carroll, F. Emmett Fitzpatrick, Jr., Philadelphia, for respondents.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION OF THE COURT*

PER CURIAM.

This appeal details another chapter in the prosecution of two members of La Cosa Nostra for the 1980 gangland-style slaying of union organizer, John McCullough. The Commonwealth is before us seeking to keep respondents in prison pending retrial, on first degree murder charges, for the slaying. It contends that this remains a capital case, and therefore, respondents are not entitled to bail. We agree.

Evidence from respondents' first trial established that Martorano and Daidone recruited Willard Moran to kill McCullough, planned the execution, assisted in its preparation, and helped Moran flee from the murder scene. Respondents wanted McCullough killed because he was organizing a new union in Atlantic City, New Jersey, which would have competed with an existing union controlled by organized crime. At the time of the murder, Respondent Daidone was vice-president of the existing union, Local 54.

On July 31, 1984, a jury convicted Martorano and Daidone of first degree murder and criminal conspiracy. Following a sentencing hearing, the jury was unable to reach a unanimous verdict as to penalty for either respondent; therefore, pursuant to Section 9711(c)(1)(v) of the Sentencing Code, 42 Pa.C.S. § 9701 et seq., the trial judge imposed sentences of life in prison. After being awarded a new trial by the Superior Court on appeal, respondents petitioned the lower court to set bail. That court denied the petition on March 10, 1992, because the Commonwealth had not yet exhausted its appeal rights. After this court denied the Commonwealth's allocatur petition, respondents again sought bail in March, 1993. The Commonwealth opposed bail, arguing that respondents were not entitled to release because they could be sentenced to death if convicted upon retrial. The trial court disagreed, and ruled that imposition of life sentences in the first trial precluded imposition of the death penalty upon retrial. The court then set bail at $2,000,000 for Martorano and $1,500,000 for

Daidone, and imposed non-monetary conditions of bail as well.[1] After the trial court set bail and denied the Commonwealth's petition to stay respondents' release pending appellate review, the Commonwealth filed a Petition for Review of Bail Order and Revocation of Bail and sought a stay from the Superior Court, which granted a temporary stay pending a hearing on the Commonwealth's petition. Argument was heard on April 12, 1993. On April 22, 1993, shortly before 5:00 p.m., the Superior Court issued a per curiam order vacating the stay of respondents' release, and denying the Commonwealth's petition. The court entered the order "without prejudice to the Commonwealth's position that the proceedings are capital in nature".[2] On April 23, 1993, the Commonwealth came to this court, seeking an emergency stay of respondents' release. Following argument before Chief Justice Nix and Justice Montemuro, a temporary stay was entered pending argument before the court *en banc.* On May 5, 1993, the court had before it two petitions filed by the Commonwealth: 1) a Petition for Stay of Respondents' Release, and 2) a Petition

1. The non-monetary conditions imposed were as follows:
 1. daily telephone calls to report in to probation department,
 2. travel limited to Pennsylvania and New Jersey,
 3. prohibition on entering any airport, train station or bus station without prior court approval,
 4. prohibition on taking air transportation to any location without prior court approval,
 5. surrender of passports and prohibition on applying for or possessing any passport while on bail,
 6. no contact with specifically named persons, identified as having a criminal background,
 7. electronic monitoring by probation department, with additional requirement that respondents be at home every evening from 7:30 p.m. until 7:00 a.m.

2. The full text of the per curiam order entered by the Superior Court is as follows:
 Following argument it is hereby ordered that:
 1. The Stay of defendants' release previously entered is vacated.
 2. The Commonwealth's Petition for Review of a Bail Order and Revocation of Bail is denied.
 3. Respondents' joint Motion for Sanctions is denied.
 It is further ordered that this denial of the Commonwealth's Petition for Review of Bail Order and Revocation of Bail is without prejudice to the Commonwealth's position that the proceedings are capital in nature.

for Review of the Bail Order of the Lower Court. Counsel for both sides advanced arguments in favor of or in opposition to the entry of a stay, and argued the issue of whether the Commonwealth could seek the death penalty upon retrial. Following argument, the court entered an order continuing the stay entered on April 23, 1993.

## I.

### Petition For Stay Of Respondents' Release

Pennsylvania Rules of Appellate Procedure 1702(c) [3] and 3315 [4] authorize this court to review the Superior Court's denial of the Commonwealth's stay request and to enter an appropriate order. *Reading Anthracite Co. v. Rich,* 525 Pa. 118, 123, 577 A.2d 881, 883 (1990). The principal purpose of such a review is to prevent an inferior tribunal from causing damage, injustice, or irreparable harm by its decision to grant or deny the requested relief. *Id.* at 124, 577 A.2d at 883. Because of the nature of our review, it is limited to determining whether the intermediate appellate court abused its discretion in refusing to grant or deny the requested relief. *Id.* at 125, 577 A.2d at 884.

When application is made to an intermediate appellate court seeking the stay of an order pending appeal, the party seeking the stay must make the following showing:

1. That they are likely to prevail on the merits of their appeal;

3. Pa.Rule of Appellate Procedure 1702(c) provides:

**Supreme Court Review of Appellate Court Supersedeas and Stay Determinations.** No appeal, petition for allowance of appeal or petition for review need be filed in the Supreme Court in connection with a reapplication under Rule 3315 (review of stay orders of appellate courts).

4. Pa.Rule of Appellate Procedure 3315 provides:

Where the Superior Court or the Commonwealth Court in the exercise of its appellate jurisdiction has entered an order under Chapter 17 (effect of appeals; supersedeas and stays), such order may be further reviewed by any justice of the Supreme Court in the manner prescribed by Chapter 17 with respect to appellate review of supersedeas and stay determinations of lower courts.

2. That they will suffer irreparable injury if they are not granted a stay;

3. That the issuance of a stay will not substantially harm other interested parties in the proceedings, i.e. Respondents; and

4. That the issuance of a stay will not adversely affect the public interest.

*Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 552–53, 467 A.2d 805, 808–09 (1983). These criteria require the intermediate appellate court to balance the interests of all parties and the public where applicable, and require the applicant to demonstrate a probability of success on the merits. *Id.* at 553, 467 A.2d at 809.

■ The Superior Court order does not explain its refusal to grant a stay. Therefore, we must conclude that the court refused to address the merits of the issue on appeal, and in so doing, could not have fully considered whether the Commonwealth was entitled to a stay. This was an abuse of discretion. As stated above, the issue on appeal was whether the Commonwealth is precluded from seeking the death penalty on retrial. Any decision regarding the right to bail pending retrial necessarily hinges on the resolution of this substantive issue, since a criminal defendant is not entitled to bail in a capital case when the proof is evident or the presumption great. Pa. Const. Art. I, § 14; *Commonwealth ex rel. Alberti v. Boyle*, 412 Pa. 398, 195 A.2d 97 (1963); *Commonwealth v. Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972).

■ Applying the *Process Gas* standard to the instant case, we find that the issuance of a stay is justified. The Commonwealth has met its burden of showing that it is likely to prevail on the merits of its appeal. A thorough review of the law leaves no doubt that this remains a capital case. Since this is a capital case where the proof is evident, respondents are not entitled to bail in any amount.[5]

5. The Commonwealth has stated that it is pursuing the death penalty based upon three aggravating circumstances: killing for hire, 42 Pa.

186

It is equally clear that the Commonwealth would have suffered irreparable harm had we not granted the stay. Respondents have both the motive and the means to flee. Absent a stay, they would be free on bail when receiving our decision whether they would be facing the death penalty upon retrial. This possibility of being sentenced to death provides a significant incentive to flee. As noted in *Truesdale, supra,* the framers of our constitution recognized the virtual certainty of flight in the face of a possible death penalty. Here, ties to La Cosa Nostra effectively ensure that respondents have access to unlimited funds and other means necessary for escape. There is no amount of cash bail sufficient to deter flight in this case. Likewise, none of the non-monetary conditions of bail imposed by the trial court can adequately insure against flight. Respondents' submission to electronic monitoring is no guarantee that they will not flee; at most, it can only alert law enforcement authorities to their flight after they are gone. Since the monitoring equipment is manned only during the day, respondents could flee during the night and their absence would not even be noted until the following morning. Finally, both respondents are aware that the Commonwealth has two *new* witnesses who, upon retrial, will testify that the murder of McCullough was a contract killing ordered by Philadelphia's organized crime family.

Granting this stay did not adversely affect the public interest; on the contrary, given the possibility, indeed probability, of respondents' flight, the public's interest in a stay is compelling. Nor did the issuance of the stay substantially harm respondents since the court expedited its review of this matter.

C.S. § 9711(d)(2); killing committed while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); and creating a grave risk of death to another, 42 Pa.C.S. § 9711(d)(7). It has also made an offer of proof regarding the evidence that it intends to introduce in support of the designated aggravating circumstances. The constitutional requirement of "proof evident" to deny bail is satisfied.

## II.

### Petition For Review Of The Bail
### Order Of The Lower Court

Having determined that the Commonwealth is entitled to a stay pending appellate review, we now turn to the issue which is central to the Commonwealth's petition for review, i.e., whether the Commonwealth is precluded from seeking the death penalty upon retrial. Before discussing the merits of this issue, however, we must address respondents' argument that the Commonwealth has not properly invoked this court's jurisdiction by filing its petition for review.

Respondents contend that the Commonwealth exhausted its statutory right to review in the Superior Court, and that this court's review is now discretionary. Such discretionary review must be sought by filing a petition for allowance of appeal or request for the invocation of extraordinary jurisdiction. Since the Commonwealth filed neither, respondents contend that the proper approach is to allow bail and require the Commonwealth to pursue the death penalty issue by pretrial motion. They argue that this is "less liberty intrusive," and causes no harm to the public interest.

While respondents are correct that the Commonwealth has no automatic right to appeal, that does not necessarily preclude our review of the issue at this stage of the proceedings. This court has, in a number of cases, treated an improvident appeal as a petition for allowance of appeal and granted review. *See*, Pa.R.A.P. 1102; *Gossman v. Lower Chanceford Tp. Bd. of Supervisors*, 503 Pa. 392, 469 A.2d 996 (1983); *O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983). Pa.R.A.P. 105(a), which provides for the liberal construction and modification of the rules of appellate procedure, gives us the authority to do so. It provides in pertinent part:

These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision, or for other good cause shown, an appellate court

may ... disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

There is good cause for deciding this substantive issue now. The question before us is one of public importance. In addition, there is nothing to be gained by refusing review, since we had to consider the merits of the issue in deciding whether the Superior Court properly denied the Commonwealth's request for a stay. By addressing the issue now, we avoid further delay and speed retrial. The Commonwealth properly raised, argued and preserved the question in the lower courts and filed its petition in a timely fashion. To deny review at this time would have the effect of elevating form over substance and delaying further a case which has been in the courts since 1984. Therefore on the facts of this case, we will treat the petition for review and statement of questions involved as a petition for allocatur, grant the petition and consider the issue presented on its merits.[6]

The issue, fully stated, is whether the Commonwealth is precluded from seeking the death penalty on retrial, where, following their first trial, respondents were convicted of first degree murder and sentenced to life imprisonment, *not* by a unanimous jury verdict, but by the trial judge following the jury's deadlock on penalty. Respondents argue that the Commonwealth is so precluded by constitutional principles of double jeopardy, equal protection, and due process; Pennsylvania's sentencing statute for first degree murder; and Section 109 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 101 et seq.

Section 9711 of the Sentencing Code, 42 Pa.C.S. § 9701 et seq., provides the sentencing procedure to be followed upon

6. Even if we were to conclude that the procedural rules do not give the court jurisdiction over the substantive issue, we could assume jurisdiction of the case pursuant to our King's Bench Powers, 42 Pa.C.S. § 726, in order to conserve judicial resources, speed the subsequent retrial in this case and provide guidance to the lower courts on a question that is likely to recur. *Commonwealth v. Lang,* 517 Pa. 390, 537 A.2d 1361 (1988).

conviction for murder of the first degree. It provides in pertinent part:

### § 9711. Sentencing procedure for murder of the first degree

**(a) Procedure in jury trials.—**

(1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

(2) In the sentencing hearing, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed and shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e). Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d).

(3) After the presentation of evidence, the court shall permit counsel to present argument for or against the sentence of death. The court shall then instruct the jury in accordance with subsection (c).

. . . .

**(c) Instructions to jury.—**

(1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:

. . . .

(iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

(v) the court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a

unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment.

. . . .

**(f) Sentencing verdict by the jury.—**

(1) After hearing all the evidence and receiving the instructions from the court, the jury shall deliberate and render a sentencing verdict.

. . . .

Section 9711(a)(1) requires that a death penalty proceeding follow a first degree murder conviction. The statute makes no distinction between a first trial and a retrial. This express mandate may not be overridden unless its application would violate some principle of constitutional law.

## A. Constitutional Double Jeopardy Principles

In its 1969 decision, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court reaffirmed an unbroken line of decisions that followed the basic principle enunciated in *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). *Ball* held that the constitutional guarantee against double jeopardy imposes no limitations upon the power to retry a defendant who has succeeded in getting his first conviction set aside. In *Pearce,* the question arose as to whether that same constitutional guarantee precluded imposition of a harsher sentence after conviction upon retrial. The Court held that it did not. It reasoned that, since the original conviction was nullified at the defendant's behest, the slate was wiped clean, and the sentencing court could impose any legally authorized sentence, whether or not it was greater than the sentence imposed following the first trial. *Pearce,* 395 U.S. at 720–21, 89 S.Ct. at 2077–79.

In *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Court recognized as a limited exception to the rule in *Pearce,* the situation in which the penalty proceeding closely resembles a trial. In *Bullington,* the petitioner was indicted for capital murder and other crimes arising out of the abduction of a young woman and her subsequent

drowning. At the guilt phase of trial, the jury returned a verdict of guilty of capital murder. The next day, as required by statute, the trial court conducted a sentencing hearing before the same jury that found Bullington guilty. The parties were afforded the opportunity to present additional evidence in aggravation or mitigation of punishment.[7] After argument, instructions from the judge and deliberation, the jury returned a unanimous verdict of life imprisonment. When Bullington was granted a new trial on appeal, the state notified him of its intention to seek again the death penalty. He challenged the state's right to do so in a series of appeals, and the Court granted certiorari to decide the issue. Noting the resemblance of the sentencing hearing to the immediately preceding trial on the issue of guilt, the Court held that, where the first jury returns a unanimous verdict of life imprisonment, the Double Jeopardy Clause of the Fifth Amendment bars imposition of the death penalty upon retrial. The first jury, by choosing life, impliedly decides that the prosecution has not proved its case for death, and "acquits" the defendant of the death penalty. This "acquittal on the merits" precludes the State from seeking the death penalty upon retrial. As stated by the Court:

> Thus, the 'clean slate' rationale recognized in *Pearce* is inapplicable *whenever a jury agrees or an appellate court decides that the prosecution has not proved its case* . . . [T]he sentence of life imprisonment which petitioner received at his first trial meant that 'the jury has already *acquitted* the defendant of whatever was necessary to impose the death sentence' . . .
>
> A *verdict of acquittal on the issue of guilt or innocence* is, of course, absolutely final.

7. Missouri law, like Pennsylvania law, contains substantive standards to guide the discretion of the sentencer, and affords procedural safeguards to the convicted defendant to ensure that the death penalty is imposed only where there are aggravating circumstances sufficient to warrant such an extreme punishment. When the state is seeking the death penalty, the prosecution has the burden of proving the existence of aggravating circumstances beyond a reasonable doubt. If the jury is unable to agree, the statute compels imposition of the sentence of life imprisonment. *Id.* at 434–35, 101 S.Ct. at 1856.

*Id.* at 443–45, 101 S.Ct. at 1860–61 (emphasis added, citation omitted).

Three years later, in *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), the Court applied *Bullington's* rationale to preclude the state from seeking the death penalty upon retrial after the trial judge "acquitted" the defendant of the death penalty at the sentencing hearing. Arizona's capital sentencing proceeding, like the Missouri proceeding, resembled a trial for purposes of the Double Jeopardy Clause. However, in *Arizona,* the trial judge decided the sentence once a jury convicted the defendant of first degree murder. The Court found that the *Rumsey* judge sat as factfinder on the issue of death; once he had rejected the death penalty and sentenced Rumsey to life imprisonment, there could be no further attempt to have the death penalty imposed. Noting that the Court's decision in *Bullington* squarely controlled the disposition of the case, Justice O'Connor wrote:

The double jeopardy principle relevant to respondent's case is the same as that invoked in Bullington: *an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge.* Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense. *The trial court entered findings denying the existence of each of the seven statutory aggravating circumstances,* and as required by state law, the court then entered judgment in respondent's favor on the issue of death. *That judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits* and, as such, bars any retrial of the appropriateness of the death penalty.

*Id.* at 211, 104 S.Ct. at 2310 (emphasis added).

In *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the Supreme Court reaffirmed the "clean

slate" rule of *Pearce* and declined to extend *Bullington* further. In *Poland*, the defendants were convicted by a jury of first degree murder, and sentenced to death by the trial judge. The judge specifically found that the aggravating circumstance of murder for pecuniary gain was not present but that another aggravating circumstance, "especially heinous" killing, was. On appeal, the Arizona Supreme Court, reversing and remanding on other grounds, held that the evidence did not support the trial court's finding of "heinous killing", but did allow a finding that this was a murder for pecuniary gain. It noted that, on retrial, the court might find the existence of this circumstance. On remand, the defendants were again convicted of first-degree murder. At the sentencing hearing, the trial judge again sentenced the defendants to death, finding both aggravating circumstances. On appeal, the Arizona Supreme Court upheld the death penalty, concluding that there was sufficient evidence of "pecuniary gain". The United States Supreme Court affirmed, holding that the Double Jeopardy Clause does not forbid a second capital sentencing hearing where either the sentencer or the reviewing court finds evidence sufficient to justify imposition of the death penalty and hence does not "acquit" the defendant on the merits. The Court noted that "the relevant inquiry in [double jeopardy] cases is whether the [sentencer] or the reviewing court has *decided* that the prosecution has not proved its case for the death penalty and hence has "acquitted" [defendants]." *Id.* at 155, 106 S.Ct. at 1755 (emphasis added). The "clean slate" rule applies in all situations other than when the sentencing judge or reviewing court has decided that the prosecution has not proved its case.

Respondents argue that federal double jeopardy principles bar a death sentence upon reconviction once a sentence of life imprisonment has been imposed. They contend that the instant case is controlled by *Bullington*, and that it is irrelevant whether the life sentence is the result of a unanimous jury verdict or imposed by operation of law following jury deadlock. Either, according to them, is an "acquittal on the

194

merits" of the death penalty which precludes further trial on the issue.

What respondents fail to apprehend is the significance of the absence of decision in the instant case. Here, unlike the sentencer in *Bullington* or the other cases just discussed, the jury did not make a decision on the merits regarding an appropriate penalty. It did not find that the state had failed to prove its case. It made no findings about the existence of any aggravating or mitigating circumstances. It was deadlocked. Since it made no decision, there could not in fact be any "acquittal on the merits." Nor did the imposition of a life sentence by the trial judge operate as an acquittal. Under Pennsylvania's sentencing scheme, the judge has no discretion to fashion sentence once he finds that the jury is deadlocked. The statute directs him to enter a life sentence. 42 Pa.C.S. § 9711(c)(1)(v) ( ... if ... further deliberation will not result in a unanimous agreement as to the sentence, ... the court *shall* sentence the defendant to life imprisonment.) (emphasis added). The judge makes no findings and resolves no factual matter. Since judgment is not based on findings which resolve some factual matter, it is not sufficient to establish legal entitlement to a life sentence. A default judgment does not trigger a double jeopardy bar to the death penalty upon retrial.

*Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969), does not compel a different result. In *Littlejohn*, this court held that a jury's *unanimous* decision to impose a life sentence was an implied acquittal of the penalty of death and precluded imposition of the death penalty upon reconviction. The holding, based solely upon federal constitutional principles of double jeopardy, equal protection, and due process, did not address the issue presented by the instant case.

Respondents make a passing reference in their brief to the state constitutional principle of double jeopardy.[8] How-

8. Article 1, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." The fifth amendment to the federal constitution, in virtually

ever, they present no argument premised on that provision; rather, they cite *Littlejohn*. As just noted, that decision rests solely on federal constitutional principles and does not advance any state constitutional rationale that would support respondents' position. Since respondents have not properly raised their state constitutional argument, it is waived.

Even if such an argument were properly raised, we would decline respondents' invitation to embrace it. We believe that the federal approach to this issue is a sound one. It accords respondents the right to a fair trial, while preserving society's interest in imposing the appropriate punishment on one who has been convicted after obtaining such a trial. Moreover, contrary to what respondents imply, our recent decision in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), does not require that we decide otherwise. The issue in that case was whether the appropriate sanction is discharge when a prosecutor intentionally withholds exculpatory evidence to secure a conviction in a capital case. *Smith* does not address the issue which is now before this court. Therefore, it provides no guidance about whether jury deadlock precludes imposition of the death penalty upon retrial.

## B. Constitutional Principles of Equal Protection and Due Process

Respondents next argue that federal principles of equal protection and due process preclude imposition of the death penalty upon reconviction. In so arguing, they place primary reliance upon *Commonwealth v. Littlejohn*, 433 Pa. at 336, 250 A.2d 811, which was decided several months before *North Carolina v. Pearce*, 395 U.S. at 711, 89 S.Ct. at 2072. Any vitality which *Littlejohn* retains in its interpretation of federal constitutional law necessarily exists only to the extent that it is consistent with *Pearce*.

In *Pearce*, the Supreme Court addressed the equal protection argument directly and rejected it, noting that "... the problem before us simply cannot be rationally dealt with in

identical language, provides: "nor shall any person be subject for the same offense to be twice in jeopardy of life or limb."

terms of 'classifications' ". *Pearce*, 395 U.S. at 722, 89 S.Ct. at 2079. On that basis, we must reject respondents' equal protection argument.

The Due Process Clause of the Fourteenth Amendment requires that the States keep established avenues of appeal "free of unreasoned distinctions that can only impede open and equal access to the courts". *Id.* at 724, 89 S.Ct. at 2080 (citations omitted). Imposing a heavier sentence upon every reconvicted defendant "for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside" would undoubtedly be a flagrant due process violation. *Id.* at 723–24, 89 S.Ct. at 2080. Such a policy would be tantamount to putting a price on an appeal, and would "chill" the exercise of that right. *Id.* As the Court noted in *Pearce*, "[d]ue process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S.Ct. at 2080. In order to assure the absence of a vindictive motivation, the Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id.* at 726, 89 S.Ct. at 2081. This requirement has been read to create "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982).

■ However, case law decided subsequent to *Pearce* established that the presumption of vindictiveness does not apply in every case where a convicted defendant receives a heavier sentence on retrial. *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 2204–05, 104 L.Ed.2d 865 (1989); *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 978–79, 89 L.Ed.2d 104 (1986). In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Court found that the *Pearce* presumption was inapplicable where a second jury imposed a harsher punishment than the defendant had received from a prior jury. The Court reasoned that the second

jury had no personal stake in the prior conviction, and no motivation to engage in "self-vindication". *Id.* at 27, 93 S.Ct. at 1983. Even where the second punishment is imposed by a judge, the presumption is inapposite so long as different sentencers assessed the varying punishments. *McCullough,* 475 U.S. at 139, 106 S.Ct. at 979.

The facts of the instant case provide no basis for a presumption of vindictiveness. Should respondents be reconvicted and sentenced anew by a jury, that jury will decide sentence without even knowing there had been a prior trial. Therefore, there is no possibility that the second sentence will be motivated by vindictiveness. Likewise, there is no justification for presuming vindictiveness if respondents are reconvicted and choose to be sentenced by a judge. In the first trial, the judge exercised no discretion in imposing sentence. Respondents were awarded a new trial because of prosecutorial misconduct, not because of any error committed by the court. Even if the sentencing judge in the second trial is the same judge who imposed the initial sentence, he will have no personal stake in the prior conviction, and no motivation to engage in self-vindication. To presume vindictiveness in the absence of a reasonable likelihood that an increased sentence is the product of actual vindictiveness would have the effect of blocking a legitimate response to criminal conduct. *Smith,* 490 U.S. at 799, 109 S.Ct. at 2204–05. The Due Process Clause does not compel such a result.

## C. Pennsylvania's Sentencing Procedure for Murder of the First Degree

 Respondents' statutory argument is based on section 9711(c)(1)(iv) and section 9711(c)(1)(v) of the Sentencing Code. Those sections provide:

(iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.

The verdict must be a sentence of life imprisonment in all other cases.

(v) the court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment.

Respondents argue that the statute makes no distinction between a unanimous jury verdict of life imprisonment and a jury's deadlock. Both, they contend, result in a verdict, and it is that verdict which functions as an "acquittal on the merits" of the death sentence. In support of this interpretation, respondents point to the last four words in the last sentence of (iv), "in all other cases", as embracing the deadlock situation.

While at first blush this interpretation may seem appealing, it loses its force when both subsections are read together and in their entirety. Subsection (iv) specifies the possible jury *verdicts* which may be entered upon conviction for first degree murder. Subsection (v) details the sentencing procedure to be followed *in the absence of a jury verdict,* i.e. when "further deliberation will not result in a unanimous agreement as to the sentence". Contrary to respondents' contentions, the last sentence of subsection (iv) states nothing more than that the verdict is life imprisonment when the jury unanimously agrees that the sentence should be life because there was neither (1) one aggravating and no mitigating circumstance, nor (2) aggravating circumstances sufficient to outweigh the mitigating circumstances. In the absence of a unanimous verdict, subsection (v) provides for the discharge of the jury and imposition of a life sentence by the court.

If the jury's failure to reach a unanimous agreement as to sentence could function as a verdict, subsection (v) would be superfluous. When there is a verdict, the court does not discharge the jury. Instead, it receives and records the verdict, and imposes the sentence fixed by the jury.[9]

9. § 9711(g) provides:

(g) **Recording sentencing verdict.**—Whenever the jury shall agree upon a sentencing verdict, it shall be received and recorded by the

Respondents also contend that the wording of the verdict slip [10] supports their claim that nonunanimity results in a life sentence. We do not agree. The text of the slip is completely consistent with our interpretation of the statute and does nothing to advance respondents' claim.

Since there was no jury unanimity as to sentence during respondents' first trial, there could be no jury verdict. Accordingly, there was no acquittal on the merits of the death penalty. Nothing in Pennsylvania's sentencing statue precludes imposition of the death penalty upon reconviction, so long as the sentencer finds that the evidence is sufficient to warrant it.

## D. Section 109 of the Pennsylvania Crimes Code

Respondents' final argument is premised on Section 109 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 101 et seq. They argue that, although this provision applies to the guilt phase of trial, by analogy it compels the conclusion that the death penalty is barred upon reconviction.

Section 109 provides in relevant part:

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that

court. The court shall thereafter impose upon the defendant the sentence fixed by the jury.

10. Pa.R.Crim.P. 358A requires that a verdict slip be given to a capital sentencing jury. The slip contains the following wording:

A. READ THROUGH THE ENTIRE VERDICT SLIP BEFORE BEGINNING DELIBERATIONS.

. . . .

D. IF, AFTER SUFFICIENT DELIBERATION, YOU CANNOT UNANIMOUSLY REACH A SENTENCING VERDICT, DO NOT COMPLETE OR SIGN THIS SLIP, BUT RETURN IT TO THE JUDGE. THE JUDGE WILL DETERMINE IF FURTHER DELIBERATIONS ARE REQUIRED. IF THEY ARE NOT, THE JUDGE WILL SENTENCE THE DEFENDANT TO LIFE IMPRISONMENT.

there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

(2) The former prosecution was terminated, after the indictment had been found, by a final order or judgment for the defendant, which has not been set aside, reversed, or vacated and which necessarily required a determination inconsistent with a fact or a legal proposition that must be established for conviction of the offense.

This argument presents nothing novel; in substance, it is really nothing more than respondents' double jeopardy argument. We have already fully reviewed that argument and found it to be meritless.

As the Commonwealth correctly points out, even the express language of § 109 does not bar imposition of the death penalty. Under § 109(1), there is no acquittal unless the trier of fact makes a finding of not guilty or there is a determination that the evidence is insufficient to warrant a conviction. As stated before, this jury made no findings; it was deadlocked. Nor did the presiding judge determine that the evidence was insufficient to support the death penalty. He merely imposed the default life sentence as required by statute.

Section 109(2) bars reprosecution when there has been a judgment for the defendant "which necessarily required a determination inconsistent with a fact or a legal proposition that must be established for conviction of the [greater] offense". In the instant case, imposition of the original life sentence did not require a determination of any factual or legal matter relevant to the death penalty. As stated above, it was imposed precisely because such a determination could not be made.

Now having concluded that this remains a capital case, we order that respondents be kept in prison pending retrial. The order of the Superior Court is reversed.

LARSEN, J., did not participate in the decision of this case.