[J-49A-2017] [MO:Saylor, C.J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| IN RE: ANGELES ROCA FIRST JUDICIAL DISTRICT PHILADELPHIA COUNTY | : | No. 42 EAP 2016 |
| | : | |
| | : | Appeal from the Order dated December |
| | : | 16, 2016 of the Court of Judicial |
| | : | Discipline at No. 14 JD 2015 |
| APPEAL OF: ANGELES ROCA | : | |
| | : | ARGUED: May 9, 2017 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                                    **DECIDED: November 22, 2017**

I join the majority with the exception of its determination regarding our Court's power to review a Court of Judicial Discipline ("CJD") order on the basis of whether the sanction is "warranted by the record" pursuant to Art V, § 18(b)(5). Majority Opinion at 21. Initially, I do not believe this issue was properly preserved and argued. Rather than addressing this issue, I would await targeted advocacy before deciding this significant question of the breadth of our Court's power of review. Moreover, and related thereto, I have serious concerns regarding the wisdom of our Court's review under such a warranted-by-the-record standard, given the language of the Constitution regarding our review, the history of that provision, and the resultant sweeping expansion of this Court's involvement in CJD's sanctions.

First, I do not believe this issue is properly before us. Appellant Angeles Roca does not raise Art V, § 18(b)(5) as a basis for our review in her questions presented, does not suggest such review in her statement of the scope and standard of review, and does not develop in any way the idea that our "lawfulness" review includes consideration of whether the sanction is supported by the record. At best, and as noted

by the majority, Appellant contends her sanction is "unwarranted under the facts of this case, is extremely harsh and excessive and absolutely contrary to existing case law." Appellant's Brief at 49. In making these bald assertions, however, she makes no legal argument grounded on the constitutional provision on which the majority relies, but, rather, does so only in support of her contention that our Court enjoys *de novo* review. Appellant's Brief at 58. Indeed, Appellant's two-pronged argument focuses solely on (1) whether our Court's decision in *In re Bruno*, 101 A.3d 635 (Pa. 2014), provides for *de novo* review, and (2) her claim that the CJD erroneously failed to discuss or distinguish prior case law. It is only in the context of these issues that Appellant generically contrasts the facts in this matter with the sanction. *See, e.g.,* Appellant's Brief at 52, 58-80. In my view, she does not preserve the question of whether we, as part of our review, consider whether the sanction is "warranted by the record" pursuant to Art V, § 18(b)(5), and the majority, in an apparent effort to reach the issue, takes the above-quoted language from page 49 of Appellant's brief out of context. An issue of such constitutional magnitude should be determined only after the issue is specifically and unambiguously raised, and after pointed advocacy by the parties.

Second, I have serious concerns about divining our Constitution to provide such broad warranted-by-the-record review. First, the constitutional language regarding our Court's review of a jurist's ultimate sanction is clear and limited: we review CJD decisions for "whether the sanctions imposed were lawful." Art V, § 18(c)(2). The majority, citing our consistent prior precedent, comes to the reasonable conclusion that "lawful" is the equivalent of "available." *See, e.g.*, *In re Merlo*, 58 A.3d 1 (Pa. 2012); *In re Lokuta*, 11 A.3d 427 (Pa. 2011); *In re Berkhimer*, 930 A.2d 1255 (Pa. 2007). However, the majority does not stop there, but cross-references the mandate in Section 18(b)(5), *which is directed at the CJD*, and concludes that this Court must also review

for whether the sanction is "warranted by the record" as an "unavoidable corollary" to the CJD's constitutional command. Majority Opinion at 21. The existence of distinct constitutional language — directed at the CJD in Section 18(b), and directed at this Court in Section 18(c) — raises significant questions about whether such review is, or should be, part of our lawfulness review.

Further, the 1993 amendments brought to Pennsylvania a significant overhaul of the process for disciplining jurists, created the independent CJD, and circumscribed this Court's review of the discipline of judges; indeed, the amendments stripped our review authority entirely where a Justice is the subject of the discipline. *See* Pa. Const. art. V, § 18(c)(1). These amendments to our Constitution thus suggest the framers envisioned a more cabined review by our Court, rather than the more expansive one conceived by the majority.

Moreover, the ramifications of our Court reviewing for whether a sanction is "warranted by the record" gives me pause. Such review gives our Court significant power over CJD's decisions, and could lead to our Court routinely weighing in on the appropriateness of the sanction imposed by the CJD and substituting its judgment for that of the CJD under the guise of appellate review — as if the CJD were merely an advisory board. This could severely erode the independence of the CJD. Indeed, the majority's interpretation of a warranted-by-the-record review seemingly results in a standard of review more akin to that of abuse of discretion or even *de novo* — standards which would appear to be in conflict with the express constitutional language seemingly limiting our review.

Finally, the majority's tack to reach the warranted-by-the-record issue by deeming it a jurisdictional matter merits comment. Majority Opinion at 26. First, the majority's discussion regarding the "scope of appellate jurisdiction" and its claim that we

can thus reach the warranted-by-the-record issue *sua sponte*, constitutes *obiter dicta* if, indeed, as asserted by the majority, the issue was properly preserved. *See id.*; *see generally In re Estate of Cassell*, 6 A.2d 60, 61 (Pa. 1939) (finding comments not necessary to decision of case are *dicta*). Indeed, the majority elevates a simple question of issue preservation to one of constitutional jurisdictional proportions, a course we properly strive to avoid. *See, e.g., In re B.*, 394 A.2d 419, 421-22 (Pa. 1978) ("Ordinarily, when faced with an issue raising both constitutional and non-constitutional questions, we will make a determination on non-constitutional grounds, and avoid the constitutional question if possible.").

Furthermore, the majority's assertion that we may raise this issue *sua sponte*, is misplaced, as it conflates concepts of a court's appellate jurisdiction with the scope and standard of its review. Specifically, "[j]urisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *In re Administrative Order No. 1-MD-2003, Appeal of Troutman*, 936 A.2d 1, 5 (Pa. 2007) (citations omitted). It is foundational that jurisdictional questions may be raised *sua sponte*. However, the jurisdiction of our Court — the competency of our Court to review CJD decisions involving a judge or magisterial district judge — is plainly answered in Article V, § 18(c)(1) ("A judge or justice of the peace shall have the right to appeal to the Supreme Court in a manner consistent with rules adopted by the Supreme Court;").

As is evident from the above, the issue raised by the majority does not go to subject matter jurisdiction. Rather, it implicates the "manner of our appellate review" of CJD sanctions, i.e., our standard of review — be it *de novo* (as asserted by Appellant),

limited to whether the sanction is available, or something in between as now suggested by the majority. *See* Majority Opinion at 11. Contrary to the majority's claims, this is not a jurisdictional question because, regardless of what we determine our proper standard of review to be — narrow or broad — and, more specifically, regardless of whether we adopt the majority's warranted-by-the-record review, our Court retains jurisdiction to conduct its review of the CJD's decisions. Stated another way, regardless of the answer to the majority's "jurisdictional" query, we will not dismiss the appeal for wont of jurisdiction. Indeed, this fact is what makes the cases cited by the majority clearly distinguishable from this matter: in those cases, the answer to the jurisdictional question led to either further review by the court, or dismissal. Majority Opinion at 26-27 (*citing*, *e.g.*, *Commonwealth v. Sanders*, 394 A.2d 522, 524 n.2, 525 (Pa. 1978) (determining question of final order implicates jurisdiction, and finding no final order warranted quashal of appeal); *Commonwealth v. Beasley*, 741 A.2d 1258, 1261-62 (Pa. 1999) (addressing timeliness of PCRA petition *sua sponte*, and, as no claims satisfied exceptions to the jurisdictional time bar, affirmed denial of petition); *Reading Anthracite Co. v. Rich*, 577 A.2d 881, 886 (Pa. 1990) (two-Justice Court) (finding appeal period goes to "jurisdiction to hear and decide a controversy")).

Moreover, the majority's citation to cases in the unique area of bifurcated sentencing jurisdiction provides no further support, reaffirms a categorical approach to jurisdiction, and actually supports the principle that questions regarding the proper standard of review are not jurisdictional. Certain of the cases cited by the majority stand for the unremarkable principle that jurisdictional issues are categorical — specifically, claims that implicate the discretionary aspects of sentencing are beyond the jurisdiction of our Court, while we have jurisdiction over issues which go to the legality of sentence. *See* Majority Opinion at 27 n.18 (citing *Commonwealth v. Shiffler*, 879 A.2d 185, 188-89

(Pa. 2005); *Commonwealth v. Bradley*, 834 A.2d 1127, 1131 (Pa. 2003)). However, other decisions cited by the majority actually support my view that questions regarding the proper standard of review are not jurisdictional in nature. Specifically, in *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996), our Court first determined that, because the question before it implicated the legality of sentence, we had jurisdiction. *Id.* Only *then* did we continue to consider the non-jurisdictional question of the proper standard of review, determining that 42 Pa.C.S. § 9781 provided that an appellate court shall vacate a sentence and remand to the sentencing court if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." *Smith*, 673 A.2d at 895. Indeed, the non-jurisdictional "unreasonableness" review in *Smith* is analogous to the question *sub judice* of whether our "lawfulness" review includes consideration of whether the sanction is "warranted by the record." Art. V, § 18(c)(2). *See also Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007).

In short, contrary to the majority's novel jurisdictional "scope" construct, which the majority asserts may be raised *sua sponte*, questions regarding our Court's proper standard of review of CJD-imposed sanctions are non-jurisdictional and must be adequately preserved and argued by the parties before we may address them. Here, Appellant's unadorned, single-sentence argument, which cites to none of the constitutional provisions the majority interprets, fails to preserve an issue of such constitutional import.

Accordingly, while I join the majority in large measure, I do not believe that the question of whether our Court has the authority to determine that a sanction is "warranted by the record" is before us. I would withhold any such a determination until we are presented with a case raising this issue, with focused advocacy.