582 A.2d 63

**TEMPLE ASSOCIATION OF UNIVERSITY PROFESSIONALS, AMERICAN FEDERATION OF TEACHERS LOCAL 4531 AFL–CIO, et al., Appellants,**

**v.**

**TEMPLE UNIVERSITY—OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1990.

Decided Oct. 8, 1990.

Designated as Opinion to be
Reported Oct. 23, 1990.

Alaine S. Williams, with her, Lee W. Jackson and Barbara J. Zarsky, Walters, Willig, Williams & Davidson, Philadelphia, for appellants.

John B. Langel, with him, Maureen M. Rayborn, Charles W. Bowser, George E. Moore and Daniel R. Meachum,

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, for appellees.

SMITH, Judge.

The Temple Association of University Professionals, American Federation of Teachers Local 4531, AFL–CIO (TAUP) has filed its application for supersedeas and/or suspension of the preliminary injunction entered by Judge Samuel M. Lehrer, Court of Common Pleas of Philadelphia County, on October 2, 1990. Judge Lehrer, acting as chancellor, enjoined the continuation of strike activity which commenced on September 4, 1990 by TAUP at Temple University of the Commonwealth System of Higher Education (Temple University). Temple University is a public employer having been established by statute as a state-related university in the system of higher education in this Commonwealth. Temple University–Commonwealth Act, Act of November 30, 1965, P.L. 843, 24 P.S. §§ 2510–1—2510–12. TAUP is the bargaining representative for bargaining unit employees certified by the Pennsylvania Labor Relations Board on July 5, 1973.[1]

Temple University filed a complaint in equity on September 26, 1990 and a petition for preliminary injunction on September 27, 1990 seeking to enjoin the strike and to direct TAUP members to return to work and resume their duties. The parties reached impasse after extended negoti-

1. The bargaining unit employees comprise all full time faculty, including Department Chairpersons, employed at Temple University, full time professional librarians on the Paley Library budget or in other colleges and schools included in the bargaining unit, and non-faculty academic professionals as defined in Article 16 of the collective bargaining agreement between Temple University and TAUP effective July 1, 1988. Excluded from the bargaining unit are Deans, Associate Deans, Assistant Deans, members of the faculty, librarians and support professionals serving outside the continental United States, the Medical School, Law School, Dental School and Hospital of Temple University, and all other non-faculty and professional employees, including teaching associates and graduate assistants, Computer Activity personnel and management, supervisors, and first-level supervisors and confidential employees as defined in Act 195. Complaint in Equity, ¶ 5.

ations to reach a new agreement, their previous agreement having expired on June 30, 1990.

The chancellor issued his preliminary injunction after concluding from evidence presented before him at three days of hearing that the strike created a clear and present danger or threat to the health, safety or welfare of the public in violation of Section 1003 of the Public Employee Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1003.

TAUP filed its application for a stay of the injunction before the Court of Common Pleas which denied the request on October 2, 1990. In its application to this Court, TAUP asserts that the chancellor committed an error of law in granting the injunction as there were no reasonable grounds to support the injunction and that TAUP is likely to prevail on the merits of its appeal to this Court as the strike did not pose a clear and present danger or threat to the health, safety or welfare of the public.

## I

At the outset, it must be stressed that this Court is bound, and limited, by well-established principles in its consideration of TAUP's application for stay of the chancellor's preliminary injunction order. The Pennsylvania Supreme Court has clearly defined the boundaries within which a reviewing court may grant a stay pending appeal. Pursuant to those standards enunciated in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 552–553, 467 A.2d 805, 808–809 (1983), the granting of a stay is warranted where the following four circumstances prevail:

1. The petitioner makes a strong showing that he is likely to prevail on the merits.

2. The petitioner has shown that without the requested relief, he will suffer irreparable injury.

3. The issuance of a stay will not substantially harm other interested parties in the proceedings.

4. The issuance of a stay will not adversely affect the public interest.

The Supreme Court further stated that:

These traditional criteria requiring the court to balance the interests of all parties, and the public where applicable, and requiring the applicant to demonstrate a probability of success on the merits, are favored and followed in the federal circuit courts.

An applicant for a stay must establish the existence of each criterion set forth above, and this Court must as a corollary evaluate the applicant's likelihood of success on appeal and consider the equities as they relate to the parties and the public. *Reading Anthracite Co. v. Rich*, 525 Pa. 118, 577 A.2d 881 (1990).

Thus, with these proscriptions in mind this Court will be guided in its determination by cogent words of wisdom from Mr. Justice Douglas in his dissenting opinion in *United Steelworkers v. United States*, 361 U.S. 39, 62–63, 80 S.Ct. 1, 4–5, 4 L.Ed.2d 12 (1959), that "[w]e need, therefore, to stick closely to the letter of the law we enforce in order to keep this controversy from being shaped by the intense interest which the public rightfully has in it."

## II

To support the first prong of the *Process Gas* analysis, TAUP vehemently argues that it will prevail on the merits of its appeal before this Court because the chancellor erred in concluding that the strike created a clear and present danger or threat to the health, safety or welfare of the public. Initially, TAUP contends that case law which has developed since the enactment of Act 195 governing public elementary and secondary teachers' strikes are inapplicable to this matter as higher education is neither equivalent to nor does it share the same constitutional or statutory protections accorded grade school education within this Commonwealth. Pa. CONST. art. III, § 14; Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702. Hence,

according to TAUP, no legislation exists which mandates a specific number of days of instruction in state-related institutions and consequently, the chancellor erred when he concluded that if the strike continued beyond October 2, 1990, Temple University could not make up the lost work in the remaining days for the fall semester.[2]

Clearly, while acknowledging that it is not this writer's prerogative to decide the merits of TAUP's appeal at this stage of the proceedings, it is however appropriate and necessary to examine existing law, or the logic of TAUP's arguments where no case law is advanced to support the position taken, in determining whether TAUP is likely to prevail on appeal.

TAUP correctly states that express statutory authority exists for public elementary and secondary education within this Commonwealth. *Student Doe v. Commonwealth*, 593 F.Supp. 54 (1984). With respect however to higher education, the General Assembly has declared that the purpose of the Temple University–Commonwealth Act is to extend Commonwealth opportunities for higher education by establishing Temple University as an instrumentality of the Commonwealth and additionally, has acknowledged a public interest in perpetuating and extending that relationship to improve and strengthen higher education within the Commonwealth. *See also* Act of January 25, 1966, P.L. 1546, 24 P.S. §§ 5151—5159, guaranteeing that deserving students are given the opportunity for self-improvement through higher education; *see also* 22 Pa.Code § 251.2 which expresses a Commonwealth purpose of providing postsecondary education.

■ The General Assembly declared that the purpose of Act 195 was to promote the orderly relationships between public employers and their employees subject to the para-

---

**2.** Regulations promulgated by the State Board of Education require that state-related institutions provide a minimum of twenty-eight weeks of instruction exclusive of registration, examinations and holidays and that an innovative calendar arrangement of less than twenty-eight weeks is permissible so long as minimum requirements relating to curricula are satisfied. 22 Pa.Code §§ 31.22, 40.53.

mount rights of Commonwealth citizens. Act 195 however makes no distinction between strikes by elementary or secondary school teachers and university professors. Where the language of a statute is explicit and clear, this Court will not disturb the plain meaning of that language by resorting to the rules of statutory construction. *Pennsylvania State Lodge of the Fraternal Order of Police v. Bailey*, 128 Pa.Commonwealth Ct. 72, 562 A.2d 985 (1989). It thus follows that case law developed in this Commonwealth interpreting Act 195 provisions are applicable to any cases falling under the Act. Section 1003 of Act 195 provides in relevant part that:

> If a strike by public employes occurs after the collective bargaining processes set forth in sections 801 and 802 of Article VIII of this act have been completely utilized and exhausted, *it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public.* In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. (Emphasis added.)

Numerous court decisions have interpreted, albeit in divergent degrees, the language "clear and present danger or threat to the health, safety or welfare of the public." This Court in *Armstrong School Dist. v. Armstrong Educ. Ass'n*, 5 Pa.Commonwealth Ct. 378, 291 A.2d 120 (1972) concluded that:

> [T]he determination of whether or not a strike presents a clear and present danger to the health, safety or welfare of the public must, therefore, require the court to find that the 'danger' or 'threat' is real or actual and that a strong likelihood exists that it will occur. Additionally, it seems to us that the 'danger' or 'threat' concerned must not be one which is normally incident to a strike by

public employees. By enacting [PERA] which authorizes such strikes, the Legislature may be understood to have indicated its willingness to accept certain inconveniences, for such are inevitable, but it obviously intended to draw the line at those which pose a danger to the public health, safety or welfare.

*Id.,* 5 Pa.Commonwealth Ct. at 383–84, 291 A.2d at 124.

In *Jersey Shore Area School Dist. v. Jersey Shore Educ. Ass'n,* 519 Pa. 398, 548 A.2d 1202 (1988), the Supreme Court examined prior judicial decisions by courts of this Commonwealth which sought to define "clear and present danger or threat" and concluded by recognizing the dilemma and divergent views created by that statutory language. Nonetheless, in affirming this Court's decision to uphold a lower court back to work order, the Supreme Court held that the loss of state educational subsidies for failure of a school district to schedule 180 days of instruction does not alone constitute a "clear and present danger or threat to the health, safety or welfare of the public." However, some guidelines were developed in aiding courts in making a most difficult decision.[3]

Without focusing on any one of the myriad economic and other facts upon which the school board relied, without weighing the interests of seniors as weightier that [sic] those of kindergartners, we conclude that, in conjunction, these factors created a school district which, although perhaps able to 'make up' a day or two of instruction, could not 'make up' the actual, the impending and the ever-increasing harm which was being wrought upon its students. On this record, the health and welfare of the students, who cannot and must not be treated as a

**3.** *See also Bethel Park School Dist. v. Bethel Park Fed'n of Teachers,* 54 Pa.Commonwealth Ct. 49, 420 A.2d 18 (1980) and *Bristol Twp. Educ. Ass'n v. School Dist. of Bristol Twp.,* 14 Pa.Commonwealth Ct. 463, 322 A.2d 767 (1974), where this Court issued injunctions against public school teachers' strikes based upon an accumulation of factors which created a clear and present danger or threat to the health, safety or welfare of the public.

category separate from the public at large, was clearly endangered and threatened.

*Id.,* 519 Pa. at 408, 548 A.2d at 1207–1208 (footnote omitted).

A review of the record in the matter *sub judice* demonstrates a prima facie showing that the chancellor's findings and conclusion that the strike posed a clear and present danger or threat to the health, safety or welfare of the public were supported by the evidence. The chancellor relied upon evidence relative to the adverse effects upon the 29,000 student population which included, inter alia, a potential reduction of $3,525,552 in financial and student aid; lost course work reflected in the fact that approximately 23,000 students do not have a full course load; the delay in graduation for some 800 undergraduate students out of a total of 1,100 students expected to graduate in January, 1991; that 6,000 students have no classes; and that 17,000 undergraduates do not carry a full course load. Based upon evidence presented by Temple University, and credited by the chancellor, that Temple would be forced to cancel most of the classes not meeting by October 1st due to an insufficient number of meeting days remaining in the fall semester, the chancellor concluded that the deprivation of a complete semester of work for those students affected constituted a clear and present danger or threat to the health, welfare and safety of the public.

Notwithstanding the impact upon students who comprise a segment of the public, the chancellor also focused upon Temple University's national stature in its graduate education program which was adversely affected because graduate students could not attend classes; education programs developed in conjunction with the Philadelphia School District, which include efforts to attract under-represented minorities and majority populations into inner-city teaching, potentially jeopardized along with community education programs; the potential loss of substantial sums in tuition revenue; and significant wage tax revenue loss to the City

of Philadelphia approximating $700,000 per year.[4]

Hence, this Court is not prepared to determine here, after reviewing the combination of the myriad record findings, that a clear and present danger or threat to the health, safety or welfare of the public would not exist if the strike were allowed to continue. Moreover, because of statutory pronouncements and protections afforded by the General Assembly relative to higher education within this Commonwealth, and the uncontested fact that Act 195 governs the relationship between the parties, it cannot be said that TAUP has satisfied the first prong of the *Process Gas* analysis by showing that its legal theory is likely to prevail. Similarly, TAUP's reliance upon logic and analogy to other public sector strike situations as opposed to legal precedent further precludes this Court from concluding that TAUP has met its burden.[5]

### III

Assuming for the moment that TAUP has satisfied the first prong of the *Process Gas* analysis, we turn to the next prong to determine whether TAUP has shown that without the requested relief, it will suffer irreparable injury. TAUP's argument that the chancellor's preliminary injunction deprives its members of a statutory right to strike constitutes per se irreparable injury simply does not satisfy this criterion. TAUP must show that the harm caused by the injunction is irreversible. At this stage of the proceedings, one can not persuasively argue that, if

4. At argument, counsel for TAUP also challenged Temple's assertion that its Commonwealth appropriations were jeopardized which total $136 million for the current fiscal year. While Temple has not, to date, received any threat of suspension of Commonwealth appropriations, such fact alone fails to negate the real potential for such occurrence. The chancellor however did not rely on this possibility alone.

5. Analogizing the strike here to a SEPTA or other public sector strikes is not dispositive of whether TAUP has met its burden. The analogy merely dictates a weighing of factors which support either a temporary inconvenience to the public on the one hand as opposed to the permanent effects upon students' lives and the public at large on the other.

successful on the merits, the possibility does not exist for compensatory or other remedial relief to be afforded TAUP at a future date. *Schulman v. Franklin and Marshall College,* 371 Pa.Superior Ct. 345, 538 A.2d 49 (1988). Furthermore, TAUP may continue to bargain collectively in an effort to resolve the dispute. Thus, an insufficient showing of irreparable harm has been presented by TAUP. *See SEPTA v. ACORN,* 128 Pa.Commonwealth Ct. 310, 563 A.2d 574 (1989). To the contrary, if a supersedeas were granted, substantial harm could befall other interested parties to this proceeding and as previously discussed in this opinion, the public interest will be adversely affected.

Accordingly, TAUP has failed to meet its burden of showing that a stay of the preliminary injunction should be entered by this Court. The application for supersedeas and/or suspension of the preliminary injunction issued by the Court of Common Pleas of Philadelphia County is therefore denied.

## ORDER

AND NOW, this 8th day of October, 1990, the application for stay of the preliminary injunction issued by the Court of Common Pleas of Philadelphia County on October 2, 1990, filed by the Temple Association of University Professionals, American Federation of Teachers Local 4531 AFL–CIO, et al., is hereby denied.