# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Abbonizio and C. Abbonizio   :
Contractors, Inc.,   :
                  Appellants   :
  :
           v.   :
  :
City of Philadelphia and Thomas P.   :   No. 974 C.D. 2019
Carney, Inc.   :   Submitted: May 11, 2020

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: June 5, 2020

Anthony Abbonizio and C. Abbonizio Contractors, Inc. (collectively, Appellants) appeal from the Philadelphia County Common Pleas Court's (trial court) July 8, 2019 order denying their Emergency Petition for Preliminary Injunction (Petition). Therein, Appellants sought to enjoin the City of Philadelphia (City) and Thomas P. Carney, Inc. (Carney) from proceeding with construction of the City Water Department's Residuals Lagoon Closure Plan and Raw Water Basin Dredging at Queen Lane Water Treatment Plant (the Project) because the City awarded Carney the public contract in violation of Section 17-109 of The Philadelphia Code (Philadelphia Code).[1] The issue before this Court is whether the trial court erred by denying Appellants' Petition. Upon review, we reverse.

---

[1] Phila., Pa., The Philadelphia Code § 17-109 (2016).

## Background

In January 2019, the City solicited sealed bids for general construction services pursuant to Bid No. 2222/B1904380 (the Bid) relating to the Project. *See* Petition ¶ 9 (Reproduced Record (R.R.) at 30a); *see also* Petition Ex. A (R.R. at 63a-68a).[2] On February 21, 2019, Appellants submitted a sealed bid for the Project in the amount of $17,340,580.00. *See* Petition ¶¶ 10-11 (R.R. at 30a). On that same date, the City publicly opened the sealed bids. Appellants were the lowest bidder, and Carney was the second lowest bidder at $17,585,655.05. *See* Petition ¶¶ 14-15 (R.R. at 31a).

On April 1, 2019, the City awarded the contract to Appellants and issued a Notice of Award. *See* Petition ¶ 22 (R.R. at 32a); *see also* Petition Ex. E (R.R. at 136a-138a). On that same date, the City and Appellants entered into a Go-Ahead Agreement.[3] *See* Petition ¶ 23 (R.R. at 32a); *see also* Petition Ex. F (R.R. at 140a). Thereafter, Appellants began working on the Project. *See* Appellants' First Emergency Application for Injunction Pending Appeal ¶ 32.

In mid-April, Appellants inquired of the City regarding the notice to proceed and other requisite Project paperwork. *See* Petition ¶ 25 (R.R. at 32a). In response, the City notified Appellants that there had been a challenge made to its contract award to Appellants. *See* Petition ¶ 26 (R.R. at 32a). By April 16, 2019

---

[2] Appellants' Petition is supported by City taxpayer/C. Abbonizio Contractors, Inc. (CAC) vice president Anthony Abbonizio's and CAC president Peter Abbonizio's affidavits. *See* Petition Exs. 1, 2 (R.R. at 47a-61a). For ease of reference, the documents attached as exhibits thereto and incorporated therein by reference are herein referred to as Petition exhibits.

[3] The Go-Ahead Agreement provides, in relevant part:

> [Appellants] ha[ve] agreed with the [City] to begin work in advance of full conformance of Contract Number 19-5992 on a mutually agreed start date. It is understood that no payments can be made until the contract is fully conformed and the purchase order issued.

Petition Ex. F (R.R. at 140a).

letter, Appellants informed the City of its continued reliance on the City's representations, and that it was incurring costs due to the award and the City's subsequent direction. *See* Petition ¶ 27 (R.R. at 32a); *see also* Petition Ex. G (R.R. at 142a-143a).

On April 17, 2019, the City directed Appellants to cease all work on the Project pending further notification. *See* Petition ¶ 28 (R.R. at 32a). By April 26, 2019 letter, the City informed Appellants that, since Carney was a qualified local business entity (LBE) certified by the Commissioner of the City's Procurement Department (Department) pursuant to Section 17-109(3) of the Philadelphia Code, Carney was entitled to the City's LBE preference for the Project, which reduced its bid by 5%. *See* Section 17-109(5)(d)(.3) of the Philadelphia Code, Phila. Code § 17-109(5)(d)(.3); *see also* Petition Exs. H (R.R. at 147a-148a), J (R.R. at 161a-162a). After the City applied the LBE preference, Carney's bid was reduced to $16,703,372.30, which made Carney the lowest bidder on the Project. *See* Petition ¶¶ 16-18 (R.R. at 31a); *see also* Petition Exs. B (R.R. at 70a-74a), H at 1 (R.R. at 147a).

By May 2, 2019 letter, Appellants informed the City that if Appellants did not receive a notice to proceed by May 8, 2019, they would seek to enjoin the City from entering into any contract for the Project. *See* Petition ¶¶ 32-34 (R.R. at 33a); *see also* Petition Exs. I (R.R. at 150a-154a), J (R.R. at 160a-162a). Appellants claimed that, since Carney failed to submit with its bid the current certification(s) and recent affidavit(s) of the LBE subcontractor(s) it intended would assist Carney to perform 51% of the work on the Project, as required by Section 17-109(5)(a)(.4) of the Philadelphia Code,[4] Carney was not entitled to the bid preference. *See id.*

---

[4] Section 17-109(5)(a) of the Philadelphia Code specifies:

> On any contract for which the City secures competitive bids pursuant to Section 8-200(1) of the Home Rule Charter, the **Commissioner**

3

On May 17, 2019, Appellants emailed the City seeking the City's position on Appellants' May 2, 2019 letter. *See* Petition Ex. J (R.R. at 160a). The City responded that its April 26, 2019 letter was its official position. *See* Petition ¶ 35 (R.R. at 33a); *see also* Petition Ex. J (R.R. at 160a). On May 20, 2019, Appellants requested from the City a copy of Carney's LBE certification. *See* Petition ¶ 36 (R.R. at 33a); *see also* Petition Ex. K (R.R. at 163a). The City did not respond to Appellants' request. *See* Petition ¶ 37 (R.R. at 34a). On May 22, 2019, the City awarded the contract for the Project to Carney. *See* R.R. at 329a.

---

**shall award a** [**5%**] **bid preference** . . . **to any Local Business that submits with its bid**:

> . . . .

> (.3) A certification by the [LBE] that, throughout the entirety of the contract:

>> (A) The [LBE] or a subcontractor will perform the majority of any work on the subject contract within the geographic limits of the City;

>> (B) The [LBE] or a subcontractor will maintain within the City a majority of the inventory or equipment that will be used on the contract; and

>> (C) The [LBE] will satisfy subsection 3(a), subsection 3(b), and at least one of the requirements identified in subsection 3(c).

> (.4) **If the** [**LBE**] **relies upon a subcontractor to meet the requirements in subparagraph (a)(.3)(A) or (a)(.3)(B) of this subsection**:

>> (A) A **current certification** from the Commissioner that the subcontractor itself is a[n] [LBE]; and

>> (B) The **subcontractor's most recent annual affidavit** provided to the Commissioner pursuant to subsection 4(a).

Phila. Code § 17-109(5)(a) (emphasis added).

4

## Facts

On May 28, 2019, Appellants filed a Complaint in Equity (Complaint), the Petition, and a memorandum of law in support of the Petition in the trial court.[5] *See* R.R. at 25a-185a, 189a-316a. On May 29, 2019, after an emergency hearing, *see* R.R. at 629a-648a, the trial court granted the Petition, thereby enjoining the City from awarding the contract to Carney or any other bidder. *See* R.R. at 186a-188a.

On June 5, 2019, Carney filed an Emergency Motion for Reconsideration (Reconsideration Motion), claiming that Carney had not received notice of the May 29, 2019 emergency hearing. *See* R.R. at 317a-523a. On June 10, 2019, Appellants opposed Carney's Reconsideration Motion. *See* R.R. at 524a-570a. On June 20, 2019, Carney filed a reply brief. *See* R.R. at 571a-580a. On June 21, 2019, Appellants filed a sur-reply brief. *See* R.R. at 581a-588a. On July 2, 2019, the City joined Carney's Reconsideration Motion. *See* R.R. at 591a-592a.

On July 8, 2019, the trial court granted Carney's Reconsideration Motion, *see* R.R. at 594a, reheard argument on Appellants' Petition, *see* R.R. at 649a-676a, and denied the Petition. *See* R.R. at 593a. On July 23, 2019, Appellants filed a notice of appeal from the trial court's order and an Emergency Application for Injunction Pending Appeal (First Emergency Application) with this Court. *See* R.R.

---

[5] Carney repeatedly references in its brief that Appellants *waited over a month* before filing the emergency Petition. However, the record reflects that between April 26, 2019 (when the City notified Appellants that it should award the contract to Carney), and May 28, 2019 (when Appellants filed the Complaint and Petition), Appellants notified the City (by May 2, 2019 letter) of their position and demanded the notice to proceed from the City, but the City did not respond. After Appellants followed up on May 17, 2019, the City confirmed its position; on May 20, 2019, Appellants requested from the City a copy of Carney's LBE certification, which the City disregarded; on Wednesday, May 22, 2019, the City officially awarded Carney the contract. Appellants filed the Petition a mere three business days later, on Tuesday, May 28, 2019 (Monday May 27, 2019, was a court holiday). Under the circumstances, it cannot be said that Appellants *waited over a month* and, thus, slept on their rights.

at 596a-612a. On July 26, 2019, the City issued Carney a Notice to Proceed. *See* Hearing Ex. P-3.

On August 7, 2019, this Court conducted a hearing on Appellants' First Emergency Application. By August 15, 2019 order, this Court denied the First Emergency Application because Appellants failed to first seek a stay from the trial court pending appeal, as required by Pennsylvania Rule of Appellate Procedure (Rule) 1732. *See* R.R. at 624a-628a. Also on August 15, 2019, Carney and the City held a pre-construction meeting. *See* Original Record (O.R.) Item 33 ¶ 3.

On August 23, 2019,[6] Appellants filed in the trial court an Emergency Motion for Stay and Injunction Pending Appeal (Stay Motion) "pursuant to [Rule] 1732," O.R. Item 29 at 1, asking the trial court to "enter an [o]rder staying this action and enjoining the [City] and [Carney] from proceeding with construction of the Project in violation of public bidding laws pending a determination of [Appellants'] appeal on the merits." O.R. Item 29 at 21; *see also* O.R. Item 29 at 2. That same day, the trial court issued the following *ex parte* order: "The emergency relief requested is hereby **DENIED**; and [] [t]he underlying [Stay M]otion shall proceed through the regular court process." Trial Ct. August 23, 2019 Order. On August 27, 2019, Carney filed an answer, new matter and counterclaim to Appellants' Complaint.[7] *See* O.R. Item 31.

On August 28, 2019, the trial court issued its opinion in support of its July 8, 2019 order pursuant to Rule 1925(a), concluding therein that it properly denied Appellants' Petition because Appellants failed to prove both their likelihood

---

[6] Appellants filed the Stay Motion in the trial court on August 16, 2019. The delay occurred because an electronic filing issue on August 16, 2019 prevented the trial court from hearing the Stay Motion on an emergent basis; therefore, Appellants withdrew the Stay Motion and refiled it on August 23, 2019. *See* Second Emergency Appl. for Stay and Injunction Pending Appeal ¶¶ 65, 67-68.

[7] Carney's counterclaim was for tortious interference with contractual relations and commercial disparagement. *See* O.R. Item 31.

of prevailing on the merits and that an injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate. *See* Trial Ct. August 28, 2019 Op.; R.R. at 618a-622a.

On September 11, 2019, Appellants filed a Second Emergency Application for Stay and Injunction Pending Appeal (Second Emergency Application) in this Court, wherein they declared that they filed the Stay Motion in the first instance to the trial court which denied them the requested emergent relief. They further asserted that because the trial court on multiple occasions denied them the requested emergent relief and, due to the time-sensitive nature of the matter, it was not practicable to continue to seek injunctive relief from the same trial court. Based thereon, in their Second Emergency Application, Appellants asked this Court to: (1) stay the underlying action in the trial court; and (2) enjoin the City and Carney from proceeding with construction of the Project. On September 19, 2019, the City filed its Response to Appellants' Second Emergency Application, and Carney filed its answer and a brief opposing the Second Emergency Application. Carney represented in its opposing brief that it had "mobilized equipment to the site, had . . . several other meetings on-site with the [City's] Water Department, ordered materials[,] and [wa]s actively engaged with personnel working on-site." Carney Br. in Opp'n to Second Emergency Appl. at 7.

On September 30, 2019, after consideration of Appellants' Second Emergency Application and the City's and Carney's opposition thereto, this Court granted the Second Emergency Application.[8] Therein, this Court concluded that Appellants satisfied both the *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983), and *Summit Towne Centre, Inc. v. Shoe*

---

[8] This Court also held that Appellants satisfied the requirements of Rule 1732 and that this controversy was not rendered moot by the City awarding the contract for the Project to Carney. *See* September 30, 2019 Op. at 5, 8.

7

*Show of Rocky Mount, Inc.*, 828 A.2d 995 (Pa. 2003), criteria for an injunction pending appeal.[9]  *See Tri-State Asphalt Corp. v. Dep't of Transp.*, 582 A.2d 55 (Pa. Cmwlth. 1990).  Accordingly, this Court enjoined the City and Carney from proceeding with the Project during the pendency of the instant appeal.[10]

On October 4, 2019, Carney filed an Emergency Application for Reconsideration of this Court's September 30, 2019 Order Granting Preliminary Injunctive Relief Ancillary to Appeal (Reconsideration Application).[11]  *See* Reconsideration Appl. at 2, 5, 7.

On October 10, 2019, Appellants responded, *inter alia*, that Carney failed to meet the legal standard for reconsideration; the Reconsideration Application must be denied because no new facts warranted consideration and Carney and the City proceeded with the Project, thereby creating the circumstances of which Carney complained.  *See* Appellants' Br. in Opp'n to Reconsideration Appl. at 5, 7, 13, 15. On October 11, 2019, Carney filed a reply brief in support of its Reconsideration Application (Carney Reconsideration Application Brief), in which the City joined.

---

[9] This Court expressly determined that

> Appellants are likely to prevail on the merits and have a clear right to relief, there exists immediate and irreparable harm, Appellants will suffer irreparable injury if the injunction is denied, greater injury would result from refusing the injunction, issuing the injunction will not substantially harm other interested parties, the injunction will maintain the existing status quo, the injunction is reasonably suited to abate the offending activity, and it will not adversely affect the public interest[.]

September 30, 2019 Op. at 23.
[10] Governor Tom Wolf's March 19, 2020 Executive Order, which compelled closure of the physical operations of all non-life sustaining Commonwealth businesses to reduce the spread of COVID-19, may have also temporarily precluded Carney's work on the Project.
[11] The Reconsideration Application was supported by Carney's president Robert Carney's affidavit.  *See* Reconsideration Appl. Ex. A.

8

On October 23, 2019, this Court denied Carney's Reconsideration Application, concluding, among other things, that since this Court did not overlook or misapprehend record material facts, Carney is not entitled to reconsideration. *See* October 23, 2019 Op.

On November 12, 2019, Appellants filed their appellate brief with this Court. On January 24, 2020, Carney filed its brief. Also on January 24, 2020, the City notified the Court that the City does not take a position in this matter and would not be filing a brief. On February 7, 2020, Appellants filed a reply brief.

**Discussion**

In the Petition, Appellants sought to "enjoin[] the City from awarding a contract to [Carney] for the [Project] in violation of public bidding laws pending a determination of the claims on the merits." Petition at 17.

Initially,

[p]reliminary injunctive relief is an equitable remedy available in equity actions. *Barcia v. Fenlon*, 37 A.3d 1 . . . (Pa. Cmwlth. 2012). 'A preliminary injunction is designed to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status quo until the legality of the challenged conduct can be determined on the merits.' *Greater Nanticoke Area Educ*[.] *Ass*[']*n v. Greater Nanticoke Area Sch*[.] *Dist*[.], 938 A.2d 1177, 1183 (Pa. Cmwlth. 2007).

Our review of a trial court's order granting or denying preliminary injunctive relief is 'highly deferential.' *Summit Towne*, . . . 828 A.2d [at] 1000 . . . . '[W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below.' *Id.* (quoting *Roberts v. B*[d.] *of Dir*[s.] *of Sch*[.] *Dist*[.], . . . 341 A.2d 475, 478 ([Pa.] 1975)). Only when it is clear no grounds exist to support the decree, or the rule of law was 'palpably erroneous or misapplied,' will such order be reversed. *Id.*

9

[(quoting *Roberts*, 341 A.2d at 478)]; *accord Novak v. Commonwealth*, . . . 523 A.2d 318, 319 ([Pa.] 1987)). Such reasonable grounds exist when the essential prerequisites for the granting of an injunction are met. *Summit Towne*, 828 A.2d at 1000.

*SPTR, Inc. v. City of Phila.*, 150 A.3d 160, 165-66 (Pa. Cmwlth. 2016).

There are six essential prerequisites a party must establish before obtaining preliminary injunctive relief:

(1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare P*[*a.*] *v. Commonwealth*, . . . 104 A.3d 495, 502 ([Pa.] 2014) (citing *Warehime v. Warehime*, . . . 860 A.2d 41, 46-47 ([Pa.] 2004)). Because the grant of a preliminary injunction is an extraordinary remedy, the failure to establish a single prerequisite requires the denial of the request for injunction. *Summit Towne*, 828 A.2d at 1000.

*SPTR, Inc.*, 150 A.3d at 166. The burden of proving each prerequisite rests on the moving party. *Weeks v. Dep't of Human Servs.*, 222 A.3d 722 (Pa. 2019); *SEIU Healthcare*; *Summit Towne*. Moreover, Pennsylvania Rule of Civil Procedure No. 1531(a) specifies: "In determining whether a preliminary . . . injunction should be granted . . . , the court may act on the basis of the averments of the . . . petition and

10

may consider affidavits of parties or third persons or any other proof which the court may require." Pa.R.C.P. No. 1531(a).

> Here, the trial court denied the Petition, concluding:

> > [T]he trial court did not abuse its discretion in denying Appellant[s'] request for a preliminary injunction because **Appellant[s] failed to prove that they are likely to prevail on the merits**. Here, **Appellant[s]** d[id] not succeed in meeting the first prerequisite as they have **failed to show that this injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate**. Specifically, at the hearing before the Commonwealth Court, the City's Water Engineer Project Manager Trisha Grace ('Grace'), testified that, although the Project is important, it is not an emergency, and that the City and [Carney] had not yet even conducted their pre-construction meeting. Moreover, damages can adequately compensate Appellant[s] for whatever work may have been done between April 1, 2019, when the Go-Ahead Agreement was issued by the City[,] and April 17, 2019, when the City notified Appellant[s] to cease all work related to the Project.

> > In accordance with [*Summit Towne*], this trial court does not need to address the other [] prerequisites . . . .

Trial Ct. August 28, 2019 Op. at 5; R.R. at 622a (emphasis added; footnote omitted).

> Because the trial court's decision only addressed two prerequisites - whether Appellants have a clear right to relief and are likely to prevail on the merits, and whether an injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate - this Court will address those prerequisites first.

> **1. The Party Seeking Injunctive Relief Has A Clear Right To Relief And Is Likely To Prevail On The Merits**

> In order to prevail on the Petition, Appellants had to show that they have a clear right to relief and are likely to prevail on the merits. *SPTR, Inc*. Without

11

explanation or analysis, the trial court concluded: "Appellant[s] failed to prove that they are likely to prevail on the merits." Trial Ct. August 28, 2019 Op. at 5.

Appellants sought an injunction because Carney's bid contained non-waivable, material defects. Specifically, they argued that, based on Carney's and the City's documentation, Carney will only be performing 20% of the work under the contract;[12] therefore, Carney was obligated to submit with its bid the LBE certification(s) and most recent annual affidavit(s) of the subcontractor(s) that would perform the remaining 31% of the work that qualified Carney for the LBE bid preference that reduced its bid by 5%. *See* Section 17-109(5)(d)(.3) of the Philadelphia Code, Phila. Code § 17-109(5)(d)(.3). Appellants claimed that since Carney did not comply with Section 17-109(5)(a) of the Philadelphia Code, Carney was not entitled to the bid preference and, thus, was not the lowest bidder.

Preliminarily, this Court has explained:

> It is clear that the statutory requirements for competitive bidding, and the ordinances enacted thereunder, do not exist solely to secure work or supplies at the lowest possible price, but also have **the "purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts** . . . and are enacted . . . not for the benefits or enrichment of bidders . . . ." *Yohe v. [City of] Lower Burrell*, . . . 208 A.2d 847, 850 ([Pa.] 1965)[.] . . . **The obvious intent** . . . **is thus also to "close, as far as possible, every avenue to favoritism and fraud** in its varied forms." *Louchheim v. [City of] Phila*[.], . . . 66 A. 1121 ([Pa.] 1907) [(]quoting *Mazet v. City of Pittsburgh*, . . . 20 A. 693 ([Pa.] 1890)[)]. Therefore, . . . the courts will not condone a situation that reveals a clear potential to become a means of favoritism, regardless of [whether] the

---

[12] Carney claims in its brief to this Court that Appellants' 20% figure is incorrect, as Carney testified at the August 7, 2019 hearing that the figure was between 20% and 25%. *See* Carney Br. at 20. However, the Bid Evaluation Checklist the City prepared and relied upon in awarding the contract, reflects Carney's 20% representation under "% OF WORK BY CONTRACTOR." R.R. at 80a; August 7, 2019 Notes of Testimony Ex. P-2 at 1.

12

> [C]ity officials may have acted in good faith in the particular case[.]

*Conduit & Found. Corp. v. City of Phila.*, 401 A.2d 376, 379 (Pa. Cmwlth. 1979) (emphasis added). Therefore, "[t]hose who bid for a public contract must be 'on an equal footing' and enjoy the same opportunity for open and fair competition. Where the bid process fails to place bidders on equal footing, the resulting contract will be declared void." *Hanisco v. Twp. of Warminster*, 41 A.3d 116, 123 (Pa. Cmwlth. 2012) (citation omitted).

LBE preference is derived from the Philadelphia Code enacted by the City's legislative body, the City Council. *See* Section 1-101 of the Philadelphia Code, Phila. Code § 1-101. In order to qualify for the LBE preference, Section 17-109(5)(a) of the Philadelphia Code specifies:

> (a) On any contract for which the City secures competitive bids pursuant to Section 8-200(1) of the Home Rule Charter, the Commissioner shall award a [5%] bid preference . . . to any Local Business that **submits with its bid**:
>
> > (.1) A current certification from the Commissioner as a[n] [LBE];
> >
> > (.2) The [LBE's] most recent annual affidavit under subsection 4(a);
> >
> > (.3) A certification by the [LBE] that, throughout the entirety of the contract:
> >
> > > (A) The [LBE] or a subcontractor will perform the majority of any work on the subject contract within the geographic limits of the City;
> > >
> > > (B) The [LBE] or a subcontractor will maintain within the City a majority of the inventory or equipment that will be used on the contract; and

(C) The [LBE] will satisfy subsection 3(a), subsection 3(b), and at least one of the requirements identified in subsection 3(c).

(.4) **If the [LBE] relies upon a subcontractor to meet the requirements in subparagraph (a)(.3)(A) or (a)(.3)(B)** of this subsection:

(A) **A current certification** from the Commissioner that the subcontractor itself is a[n] [LBE]; and

(B) The subcontractor's most **recent annual affidavit** provided to the Commissioner pursuant to subsection 4(a).

Phila. Code § 17-109(5)(a) (emphasis added).

Section 17-109(5)(a)(.4) of the Philadelphia Code makes clear that if Carney required the services of LBE subcontractor(s) to complete the other 31% of the contract work, Carney had to submit the LBE subcontractor(s)' current LBE certification and recent annual affidavit **with its bid**.[13] The City and Carney agreed that Carney did not submit a current certification or annual affidavit of any LBE subcontractor(s) with its bid.

The City claimed that the Philadelphia Code, the City's Local Bidding Preferences for Procurement Contracts (LBE Regulations)[14] and the bid documents,

---

[13] To the extent Carney asserts that the reference in Section 17-109(5)(a)(.4) of the Philadelphia Code to "*a* subcontractor" means it must submit the certification and affidavit with its bid *only* if it intends to rely on a *single* subcontractor to complete the other 31% of the work, Section 1902 of the Statutory Construction Act of 1972, which states that "[t]he singular shall include the plural, and the plural, the singular[,]" 1 Pa.C.S. § 1902, belies such an argument.

[14] Section 6 of the LBE Regulations similarly provides, in relevant part:

Bidder, in order to be eligible to receive the bid preference, must submit with its bid the following information:

a. Current LBE certification number from the [Procurement Commissioner];

b. If requested by [the Department], most recent annual affidavit provided pursuant to Section 5 above; and

14

taken together, mandate that Carney merely certify with its bid submission that it will comply with the requirement that 51% of the work performed on the contract be performed by LBEs. The City further asserted that, since Section 17-109(5)(a)(.3) of the Philadelphia Code ends with a period, Carney only had to submit the items referred to in Section 17-109(5)(a)(.1), (.2) and (.3) of the Philadelphia Code with its bid, and the separate requirement in Section 17-109(5)(a)(.4) of the Philadelphia Code was not required at bid submission.

> Under the Statutory Construction Act [of 1972 (SCA),[15]] it is fundamental that '[t]he object of all interpretation and

---

c. A certification that, throughout the entirety of the contract:

    i. The LBE or a subcontractor will perform, on the site with its own workforce, the majority of any work (which shall mean work with a value of at least 51% of the original total contract price) on the subject contract within the geographic limits of the [C]ity; and

    ii. The LBE or subcontractor will maintain within the City a majority of the inventory or equipment that will be used on the contract or the amount of inventory that is customary for that industry; and

    iii. The [LBE] will satisfy Sections 3(a), 3(b), 3(c), and at least one of the requirements identified in 3(d) above.

d. If the Bidder relies upon a subcontractor to meet the requirements in subsection 6(c)(i) or 6(c)(ii), the Bidder must submit the following:

    i. A current certification from the Procurement Commissioner that the subcontractor itself is a[n] [LBE]; and

    ii. Subcontractor's most recent annual affidavit provided pursuant to Section 5(a) [(relating to annual recertification)] above.

LBE Regulations § 6.

[15] 1 Pa.C.S. §§ 1501-1991. Section 1504 of the SCA provides: "In all cases where . . . anything is directed to be done by any statute, the directions of the statute shall be strictly pursued[.]" 1 Pa.C.S. § 1504. Although the Philadelphia Code is an ordinance and not a statute, this Court has declared that "[t]he rules of statutory construction are applicable to statutes and ordinances alike." *In re Thompson*, 896 A.2d 659, 669 (Pa. Cmwlth. 2006).

construction of statutes is to ascertain and effectuate the intention of the General Assembly[,] and that [**e**]**very statute shall be construed, if possible, to give effect to all its provisions**.' 1 Pa.C.S. § 1921(a). In this regard, the [SCA] instructs that '[**w**]**hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit**.' 1 Pa.C.S. § 1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than the statutory language. 1 Pa.C.S. § 1921(c).

*Phila. Entm't & Dev. Partners, L.P. v. City of Phila.*, 939 A.2d 290, 294 (Pa. 2007) (emphasis added). Moreover, "[w]here the language of a statute is explicit and clear, this Court will not disturb the plain meaning of that language by resorting to the rules of statutory construction."[16] *Temple Ass'n of Univ. Prof'ls, Am. Fed'n of Teachers Local 4531 AFL-CIO v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 582 A.2d 63, 65 (Pa. Cmwlth. 1990).

Section 17-109(5)(a) of the Philadelphia Code begins with "the Commissioner shall award a [5%] bid preference . . . to any [LBE] that **submits with its bid:** . . . ." Phila. Code § 17-109(5)(a). Thereafter are listed four parts – (.1), (.2), (.3) and (.4). The items listed in all four parts must be submitted with the bid.

Subsection (.3) does not end with a semicolon like subsections (.1) and (.2) because subsection (.3) contains additional subsections thereunder.[17] Subsection (.3)(C) ends with a period since it completes subsection (.3)'s inclusive criteria list (of (A), (B) and (C)), as in subsection (.4). Moreover, the mere fact that subsection (.3) ends with a **period** rather than a **semicolon** cannot subvert the plain meaning of

---

[16] Because the Philadelphia Code language at issue in this appeal is not ambiguous, Carney's reliance in its brief to this Court on City Council's interpretation during 2016 discussions related to proposed amendments to Philadelphia Code Chapter 17 is misplaced.

[17] Like in subsection (.4), a colon (rather than a semicolon) appropriately follows a complete phrase and introduces the list that follows subsection (.3). Also, just as in subsection (.4), a period ends the additional list. There is no proper place to put a semicolon after subsection (.3) in these circumstances.

Section 17-109(5)(a) of the Philadelphia Code (i.e., a complete list of required submissions). If such a conclusion was to be drawn, then the Philadelphia Code's careful delineation of subsection (.4) would be nullified. Certainly, if City Council had intended the period after Section 17-109(5)(a)(.3) of the Philadelphia Code to mean that (.4) was not required at the time of bid submission as the City contends, it would have drafted the provision differently. Nevertheless, the plain meaning of Section 17-109(5)(a) of the Philadelphia Code clearly mandates that Carney must satisfy **all four requirements** with its bid if it relied upon a subcontractor to satisfy the requirements in subparagraph (a)(.3)(A) or (a)(.3)(B) of that subparagraph. Because Section 17-109(5)(a) of the Philadelphia Code is clear and unambiguous, this Court need not look to the City's LBE Regulations[18] and bid documents for clarification.

Neither Carney nor the City can choose to disregard Section 17-109(5)(a)(.4) of the Philadelphia Code. The law is "well settled that [the City] has no discretion to waive defects in the bidding process if the result would violate applicable . . . city ordinance competitive bidding requirements." *Shaeffer v. City of Lancaster*, 754 A.2d 719, 722 (Pa. Cmwlth. 2000); *see also Rainey v. Borough of Derry*, 641 A.2d 698 (Pa. Cmwlth. 1994); *Conduit & Found. Corp.* "When competitive bidding is used and the procedures followed emasculate the benefits of such bidding, . . . judicial intervention is proper." *Rainey*, 641 A.2d at 702 (quoting *Am. Totalisator Co., Inc. v. Seligman*, 414 A.2d 1037, 1041 (Pa. 1980)). Moreover, "[i]n cases where public contract bidding irregularities are shown, it is proper for a

---

[18] Notwithstanding, the LBE Regulations mirror and support this Court's interpretation of Section 17-109(5)(a) of the Philadelphia Code. In order for Carney to receive the LBE preference, it was obligated to provide a current certification and annual affidavit of the LBE subcontractor and the subcontractor's most recent annual affidavit, which is the same requirement in Section 17-109(5)(a)(.4) of the Philadelphia Code.

17

reviewing court to enjoin the contract awarded according to those faulty procedures." *Stapleton v. Berks Cty.*, 593 A.2d 1323, 1332 (Pa. Cmwlth. 1991).

Based upon this Court's strict reading of Section 17-109(5)(a) of the Philadelphia Code, Carney had to fulfill the requirements in Section 17-109(5)(a)(.1), (.2), (.3) **and (.4)** of the Philadelphia Code **when it submitted its bid** in order to receive the LBE preference in accordance with the Philadelphia Code. It being undisputed that Carney did not satisfy the specific LBE preference requirements, Carney should not have received the benefit thereof. Without the LBE preference, Carney was not the lowest bidder. Rather, Appellants submitted the Project's lowest bid. Accordingly, Appellants are likely to prevail on the merits and their right to relief is clear.

Based upon the foregoing, there were no apparently reasonable grounds to support the trial court's conclusion that Appellants failed to establish that they are likely to prevail on the merits and their right to relief is clear. *SPTR, Inc.*

### 2. Injunction Is Necessary To Prevent Immediate And Irreparable Harm That Cannot Be Compensated Adequately By Damages

In order to prevail on the Petition, Appellants also had to demonstrate that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages. *SPTR, Inc.* The trial court held:

> **Appellant**[s] d[id] not succeed in meeting the first prerequisite as they have **failed to show that this injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate**. Specifically, at the hearing before the Commonwealth Court, [Grace] testified that, although the Project is important, it is not an emergency, and that the City and [Carney] had not yet even conducted their pre-construction meeting. Moreover, damages can adequately compensate Appellant[s] for whatever work may have been done between April 1, 2019, when the Go-Ahead

18

Agreement was issued by the City[,] and April 17, 2019, when the City notified Appellant[s] to cease all work related to the Project.

Trial Ct. August 28, 2019 Op. at 5.

Notwithstanding Grace's August 7, 2019 testimony that the Project is not an emergency, and that the City and Carney had not yet conducted their pre-construction meeting, *see* August 7, 2019 Notes of Testimony (N.T.) at 48, 53, 55, Carney and the City had expressed their clear intention to quickly proceed with the Project, all the while fully aware of the ongoing litigation and resulting potential liability of the Project's increased costs upon the taxpayers.[19] Accordingly, the harm is immediate.

Relative to irreparable harm, the Pennsylvania Supreme Court has declared that "[f]or one to continue [] unlawful conduct constitutes irreparable injury[,]" and "[s]preading unlawful conduct is irreparable injury of the most serious nature[.]" *Pa. Pub. Util. Comm'n v. Israel*, 52 A.2d 317, 321 (Pa. 1947); *see also Philips Bros. Elec. Contractors, Inc. v. Valley Forge Sewer Auth.*, 999 A.2d 652 (Pa. Cmwlth. 2010). Our Supreme Court has further ruled:

> [W]here the offending conduct sought to be restrained through a preliminary injunction violates a statutory mandate, irreparable injury will have been established. *See Commonwealth v. Coward*, . . . 414 A.2d 91 . . . ([Pa.] 1980) (holding that where a statute prescribes certain activity, the court need only make a finding that the illegal activity occurred to conclude that there was irreparable injury for purposes of issuing a preliminary injunction); . . . *Israel* . . . (holding that when the Legislature declares certain conduct to be unlawful, it is tantamount to calling it injurious to the public, and to continue such unlawful conduct constitutes irreparable injury for purposes of seeking injunctive relief); *Commonwealth ex rel. Corbett v.*

---

[19] On August 15, 2019, the same date this Court denied the First Emergency Application on procedural grounds, the City and Carney conducted their pre-construction meeting, and Carney proceeded with construction on the Project.

> *Snyder*, 977 A.2d 28 (Pa. Cmwlth. 2009) (affirming issuance of a preliminary injunction and finding that irreparable harm was presumed where there was a credible violation of the state consumer protection statute).

*SEIU Healthcare*, 104 A.3d at 508.

Here, the purported unlawful conduct is the City's and Carney's violation of the Philadelphia Code.[20] In *Shaeffer*, this Court ruled specifically regarding competitive bidding that "[s]tatutory violations are sufficiently injurious to constitute irreparable harm, and a preliminary injunction may be upheld based upon the violation of competitive bidding requirements[.]"[21] *Id.* at 723 (citation omitted). The *Shaeffer* Court reached that conclusion without considering whether monetary damages could compensate the second lowest bidder for any losses incurred if the injunction was denied. Rather, the Court held, based solely on the fact that the lowest bidder's bid "contained an unlawful deviation from the [bid s]pecifications and violated competitive bidding requirements[,]" that "[t]he irreparable harm requirement was satisfied[.]" *Id.* at 723. The harm in the instant case is likewise irreparable.

Based upon the foregoing, there were no apparently reasonable grounds to support the trial court's conclusion that Appellants failed to establish that this injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate.

Having determined that Appellants satisfied two of the six prerequisites to obtain a preliminary injunction, *SPTR, Inc.*, and since Appellants and Carney addressed all six prerequisites in their briefs, this Court will examine the remaining four factors. *See SEIU Healthcare*.

---

[20] "A municipal ordinance is in reality a statute[.]" *Cloverleaf Trailer Sales Co. v. Borough of Pleasant Hills, Allegheny Cty.*, 76 A.2d 872, 875 (Pa. 1950).

[21] Although *Shaeffer* involved the violation of mandatory bid requirements, because Section 17-105(a)(.4) of the Philadelphia Code is a mandatory bid requirement, *Shaeffer* is controlling.

**3. Greater Injury Would Result From Refusing The Injunction Than From Granting It, And, Concomitantly, The Issuance Of An Injunction Will Not Substantially Harm Other Interested Parties In The Proceedings**

Appellants assert that greater injury would result to them and the City's taxpayers than the City and Carney if the injunction is denied.

Preliminarily,

> [l]aws that require competitive bidding for public projects seek to apportion awards fairly and economically.[22] Mandatory compliance with statutory procedures and bid instructions serves this goal in two ways. Initially, clear-cut ground rules for competition guarantee that none of the contractors will gain an undue advantage through better information of the bid solicitor's operation. Second, the strict adherence principle lessens the possibility of fraud and favoritism. In the opinion of the Pennsylvania judiciary, moreover, the appearance of propriety is so important that genuine deviations may not be tolerated even if all available evidence suggests that the parties acted in good faith.

*Hanover Area Sch. Dist. v. Sarkisian Bros., Inc.*, 514 F. Supp. 697, 703 (M.D. Pa. 1981) (citations omitted); *see also Jay Twp. Auth. v. Cummins*, 773 A.2d 828 (Pa. Cmwlth. 2001).

By not requiring Carney to submit the documentation required by Section 17-109(5)(a)(.4) of the Philadelphia Code, "which exist[s] to invite competition and to guard against favoritism, improvidence, extravagance, fraud and

---

[22] This Court has held:

> [C]ompetitive bidding serves to enhance competition which, in turn, encourages offering services at the best price. Thus, it is important that the bidding process foster confidence among potential bidders that their bids will be considered fairly and that they will not be denied a substantial benefit afforded to their competitors.

*Marx v. Lake Lehman Sch. Dist.*, 817 A.2d 1242, 1247 (Pa. Cmwlth. 2003) (citation omitted).

21

corruption in the award of municipal contracts[,]" *Shaeffer*, 754 A.2d at 723, Appellants and the other bidders did not "enjoy the same opportunity for open and fair competition." *Hanisco*, 41 A.3d at 123. Moreover, the City and Carney conducted their pre-construction meeting on August 15, 2019, and Carney proceeded to work on the Project. By denying the injunction, the trial court authorized the City and Carney to forge ahead on the Project obtained by unfair advantage, to the detriment of Appellants and the other bidders, creating the appearance of impropriety by the City and Carney. In addition, while fully aware of the ongoing litigation and resulting potential consequences, the City and Carney proceeded with utmost speed. Therefore, granting the injunction would not substantially harm Carney or the City. Conversely, if the trial court had granted the injunction, Carney's work on the Project would have ceased until the trial court decided the merits of Appellants' case.

The City and Carney had every opportunity to wait until the trial court decided the merits of Appellants' case since, as the City's own witness testified, the Project was "not an emergency bid." August 7, 2019 N.T. at 53. By waiting, the City and Carney would have maintained an appearance of propriety and also demonstrated the good faith exalted by competitive bidding laws. Thus, greater injury resulted from refusing the injunction than by granting it, and there were no apparently reasonable grounds on which the trial court could have held otherwise.

### 4. The Injunction Will Properly Restore The Parties To Their Status As It Existed Immediately Prior To The Alleged Wrongful Conduct

In the Petition, Appellants sought to "enjoin[] the City from awarding [the] contract to [Carney] for the [Project] in violation of public bidding laws pending a determination of the claims on the merits." Petition at 17 (R.R. at 44a). Because Appellants' Complaint included a general prayer for relief, the City's awarding of the

22

contract did not moot this controversy. *See Abbonizio v. City of Phila.* (Pa. Cmwlth. No. 974 C.D. 2019, filed September 30, 2019), slip op. at 5-8. Courts may grant any relief that is consistent with the action's theory and purpose, *see id.*, including Appellants' request to "enjoin[] the City and Carney from proceeding with construction on the Project in violation of public bidding laws pending a determination of Appellants' appeal on the merits." Second Emergency Appl. at 41; *see also* O.R. Item 29 at 2, 21.

The Pennsylvania Supreme Court has ruled: "The purpose of a preliminary injunction is to preserve the status quo **as it exists** or previously existed before the acts complained of, thereby **preventing irreparable injury or gross injustice**." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992) (bold emphasis added; original italic emphasis omitted); *see also Santoro v. Morse*, 781 A.2d 1220 (Pa. Super. 2001).

Here, the acts complained of occurred in April 2019, when the City disregarded Section 17-109(5)(a)(.4) of the Philadelphia Code, granted Carney the LBE preference, and awarded Carney the contract. Before that time, only Appellants had incurred costs pursuant to their work under the Go-Ahead Agreement, and no public funds had been expended.[23] The status quo would have been maintained if Carney stopped work on the Project pending the trial court's decision on the merits of Appellants' Complaint. Granting Appellants' requested injunctive relief would have properly enjoined the City and Carney from changing the status quo in the meantime, and there were no apparently reasonable grounds on which the trial court could have held otherwise.

---

[23] Although Appellants began work on the Project, the Go-Ahead Agreement clearly specified that "no payments can be made until the contract is fully conformed and the purchase order issued." R.R. at 468a.

23

### 5. An Injunction Is Reasonably Suited To Abate The Offending Activity

Appellants maintain that an injunction was reasonably suited to abate the offending activity, because it would have prevented the City from proceeding under a contract with Carney that violates the City's public bidding laws.

The offending activity in this case was the City awarding the contract to Carney and Carney proceeding on the Project despite not complying with required subcontractor documentation and, thus, not being the lowest bidder. Enjoining the City and Carney from proceeding with construction on the Project in violation of public bidding laws pending the trial court's determination of Appellants' Complaint on the merits was reasonably suited to abate the offending activity, and there were no apparently reasonable grounds on which the trial court could have held otherwise.

### 6. An Injunction Will Not Adversely Affect The Public Interest

Finally, Appellants claim that an injunction would not adversely affect the public interest but, rather, would have the effect of ensuring that the City's procurement process complies with the City's public bidding requirements, and that the contract for the Project is legally awarded to the lowest responsive and responsible bidder.

Section 17-109(1) of the Philadelphia Code sets forth what City Council intended by granting an LBE preference – to encourage businesses to locate and remain in the City and positively impact the City's economy by creating local jobs and increasing tax revenue. *See* Phila. Code § 17-109(1). Clearly, the goal of Section 17-109(5)(a) of the Philadelphia Code is to benefit the public, particularly bidders and City taxpayers.

Denying the injunction degraded the bidding process City Council intended to be fair and free from favoritism, fraud and corruption, had a chilling

24

effect on potential bidders, and allowed the Project's costs and, thus, taxpayers' liability, to increase. "This is, after all, [partially] a taxpayer's suit which alleges that the irregularities in the process defeated the safeguards that competitive bidding was designed to insure. [This Court] believe[s] that the threat to the public fisc in this case [is] real . . . ." *Stapleton*, 593 A.2d at 1332.

Moreover, disregarding the express provisions of Section 17-109(5)(a) of the Philadelphia Code is unlawful. The Pennsylvania Supreme Court has held: "When [City Council] declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public." *Coward*, 414 A.2d at 98 (quoting *Israel*, 52 A.2d at 321); *see also SEIU Healthcare*. Certainly, the public's interest is in having duly adopted ordinances enforced. Ultimately, prudence, not speed, is in the taxpayers' best interests.

Under the circumstances presented to the trial court, an injunction would have ensured the public's confidence that the Philadelphia Code's express provisions were upheld, that contractors cannot gain an advantage by disregarding the LBE preference criteria, and that taxpayers' funds are being protected, and there were no apparently reasonable grounds on which the trial court could have held otherwise.

Having determined that Appellants satisfied the six criteria necessary to obtain a preliminary injunction, this Court concludes that the trial court erred by denying the Petition.

**Conclusion**

Because Appellants satisfied the prerequisites for a preliminary injunction, and this Court can identify no reasonable grounds for the trial court to have denied such relief, we reverse the trial court's July 8, 2019 order, and issue a preliminary injunction enjoining the City and Carney from proceeding with

25

construction on the Project pending the trial court's decision on Appellants' case on the merits.  *See SEIU Healthcare*.


_____
ANNE E. COVEY, Judge



Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Abbonizio and C. Abbonizio :
Contractors, Inc., :
     Appellants :
         :
    v.     :
         :
City of Philadelphia and Thomas P. : No. 974 C.D. 2019
Carney, Inc. :

## O R D E R

AND NOW, this 5th day of June, 2020, the Philadelphia County Common Pleas Court's (trial court) July 8, 2019 order is REVERSED.

The City of Philadelphia (City) and Thomas P. Carney, Inc. are hereby ENJOINED from proceeding with the non-emergent construction project described as the City Water Department's Residuals Lagoon Closure Plan and Raw Water Basin Dredging at Queen Lane Water Treatment Plant, pending the trial court's decision on the merits of Anthony Abbonizio's and C. Abbonizio Contractors, Inc.'s case.

_____
ANNE E. COVEY, Judge